HARRISON SQUARE PARTNERSHIP, APPELLANT, V.
SARPY COUNTY BOARD OF EQUALIZATION, APPELLEE.
574 N.W. 2d 180

Filed February 3, 1998.    No. A-97-455.

Robert C. Doyle and Aimee J. Haley, of Walsh, Fullenkamp & Doyle, for appellant.

Michael A. Smith, Deputy Sarpy County Attorney, for appellee.

MILLER-LERMAN, Chief Judge, and IRWIN and MUES, Judges.

MILLER-LERMAN, Chief Judge.

Harrison Square Partnership (Partnership) appeals the order of the Nebraska Tax Equalization and Review Commission

(Commission) to which the Partnership appealed the decision of the Sarpy County Board of Equalization (Board) regarding the valuation of a certain commercial property (Property) owned by the Partnership. The Partnership was afforded some relief by the Commission and denied other relief sought before the Commission and, therefore, appeals. For the reasons recited below, we affirm the order of the Commission.

## BACKGROUND

The Property, a neighborhood shopping center built in the 1950's, is located at 36th and Harrison Streets in Sarpy County. The Property was half vacant when it was purchased by the Partnership at a foreclosure sale in 1993 for $565,000. The Property was assessed for 1996 tax purposes at $1,478,620.

The Partnership protested to the Board the Property's 1996 property tax assessment. There is no verbatim transcription of the hearing before the Board in the record on appeal, and this appeal proceeds on this basis. It appears from the evidence before the Commission that at the hearing before the Board conducted on July 10, 1996, the Board was advised by the county's appraiser that based on certain assumptions regarding the vacancy rate, the capitalization rate, and other variables, the Property should be valued at $1,478,620. The Partnership presented as evidence to the Board an expense statement and pricing quotes for new equipment needed to replace obsolete equipment. Following the hearing, the Board determined that the Property was properly valued for property tax purposes at $1,478,620, and the Partnership timely appealed the valuation to the Commission.

At a hearing before the Commission, William Leonard, a licensed commercial appraiser for Sarpy County, testified that he used the "income approach" to determine the Property's valuation of $1,478,620. In arriving at his valuation, Leonard assumed a gross operating income of $312,000. In addition, Leonard stated that he used a capitalization rate of 12.25 and a 5-percent vacancy rate in calculating the Property's valuation. The capitalization rate can be determined, in part, by the age and condition of a property.

Leonard acknowledged that since making his valuation of the Property, he had learned that the Property had a higher vacancy

rate than he had previously thought, but less than the figure claimed by the Partnership. Leonard stated that a 10- to 15-percent vacancy rate, rather than 5 percent, should be used in calculating valuation for the Property. Leonard testified that if actual income and expenses of the Property were used, the valuation would be $1,035,330.

Gary Clatterbuck, a partner in the Partnership, testified at the Commission hearing on behalf of the Partnership that the actual gross income from rent for the Property in 1995 was $177,486. Clatterbuck also stated that there was a similar type of property, Bellevue Plaza, which was newer and in a better location and condition than the Property. Clatterbuck stated that Bellevue Plaza nevertheless enjoyed a higher capitalization rate, resulting in a lower overall valuation. Leonard testified that there was not "a whole lot of difference" in the conditions of the Property and that of Bellevue Plaza. Clatterbuck admitted before the Commission that he had not provided the Board at the prior hearing with a different capitalization rate or information to justify a different capitalization rate when the Board heard the Partnership's protest.

At the hearing, the Commission took "judicial notice" of the pleadings in the case file, the Marshall Valuation Service, the Nebraska Department of Revenue's Nebraska Assessor's Reference Manual, a textbook on property assessment valuation, the rules and regulations of the Commission, the Nebraska Department of Revenue property tax division's 1996 ratios and measures of central tendency, and the 1996 Sarpy County commercial property profile.

On April 3, 1997, the Commission issued an eight-page detailed written order. The finding and order covers the nature of the case, the duties of the parties, a review of the evidence, an analysis referencing various tax concepts and appraisal techniques, a standard of review, findings, conclusions, and an order. The Commission found, inter alia, that "[w]hen actual income and expense figures and mass appraisal techniques are mixed, the result is an incorrect and skewed valuation." With regard to the income approach of valuation, the Commission upheld the figures used by the Board, except for the vacancy rate.

Because of Leonard's concession that the vacancy rate was mistakenly set at 5 percent, the Commission adjusted the vacancy rate to 15 percent. The Commission made no other changes to the Board's calculation of valuation of the Property. The Commission stated that "[n]o evidence came before the Commission to contradict the County's determination that 12.25% was the appropriate capitalization rate for the subject property." The Commission reversed the Board's decision and set the 1996 value for the Property at $1,322,755. The Partnership appeals the Commission's decision to this court.

## ASSIGNMENTS OF ERROR

The Partnership alleges that the Commission acted arbitrarily, capriciously, and unreasonably when it (1) disregarded the evidence of gross disparity between the assessed economic rent and the actual potential economic rent and (2) failed to address the gross disparity between capitalization rates applied to the Property and other properties with better risk factors.

## STANDARDS OF REVIEW

Neb. Rev. Stat. § 77-1511 (Reissue 1996) provides that the Commission shall hear appeals from a county board of equalization as in equity and without a jury and determine anew all questions raised before the county board of equalization which relate to the liability of the property to assessment, or the amount thereof. Section 77-1511 further provides that the Commission shall affirm the action taken by the board unless evidence is adduced establishing that the action of the board was unreasonable or arbitrary, or unless evidence is adduced establishing that the property of the taxpayer is assessed too low.

Neb. Rev. Stat. § 77-5019(1) (Reissue 1996) provides that any person aggrieved by a final decision in a case appealed to the Commission, "whether the decision is affirmative or negative in form, shall be entitled to judicial review in the Court of Appeals." Although this court has held that certain procedural aspects of appeals from the Commission to this court are guided by the jurisprudence under the Administrative Procedure Act, see *McLaughlin v. Jefferson Cty. Bd. of Equal.*, 5 Neb. App. 781, 567 N.W.2d 794 (1997), pursuant to statute, the review by this court of an appeal from the Commission's ruling shall be

conducted for errors on the record of the Commission as directed by statute, § 77-5019(5). Compare Neb. Rev. Stat. § 84-917 (Reissue 1994) (providing that appeals from administrative actions to district court shall be reviewed by district court de novo on the record).

When reviewing an order for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Conservatorship of Estate of Marsh,* 5 Neb. App. 899, 566 N.W.2d 783 (1997).

## ANALYSIS

*Commission's Standard of Review.*

In its order, the Commission adopted an " 'Unreasonable or Arbitrary' " standard of review and proceeded to evaluate the Board's decision under this standard. This was proper under § 77-1511. As noted above, the standard of review to be used by this court in analyzing the decision of the Commission is for errors on the record. § 77-5019(5).

*Economic Rent.*

The Partnership argues on appeal that the rental rates used by Leonard in his valuation based on the income approach were arbitrary and unreasonable. Essentially, the Partnership claims that in applying the income approach to valuation, the Commission should have utilized the Property's actual rental income rather than the figures supplied by Leonard. Leonard's testimony is clear that he used an income approach to valuation.

According to the Nebraska Assessor's Reference Manual, Reg-44-002.05C, the income approach is explained as "includ[ing] but is not limited to making a comparison of properties or portions of properties with known rental levels, expenses, and lease terms, to properties which are physically, functionally, and economically similar but are not presently rented or at economic rent. . . ." Economic rent is defined in International Association of Assessing Officers, Property Assessment Valuation at 204 (2d ed. 1996), as "the annual rent that is justified for the property on the basis of a careful study of comparable properties in the area."

Pursuant to Neb. Rev. Stat. § 77-112 (Reissue 1996), actual value of real property for tax purposes shall mean the market value of real property in the ordinary course of trade. Under § 77-112, actual value may be determined using professionally accepted mass appraisal techniques. Under § 77-112, three techniques are set forth as examples of acceptable mass appraisal techniques; the first one of which, § 77-112(a), is essentially the income approach as defined in the Nebraska Assessor's Reference Manual. As noted above, Leonard used the income approach in valuing the Property. Leonard's use of the income approach is thus authorized by statute.

Leonard was asked at the hearing before the Commission about his opinion regarding valuation of the Property. Leonard explained that while it was difficult to place values on different properties in a manner that would be somewhat equal between and among them, he arrived at a dollar-per-square-foot number in order to find a middle ground that is fair and reasonable to all properties. Leonard noted that the dollar-per-square-foot amount he arrived at for the bank located in the Property was among the lowest that he had used on any bank in the area. Leonard stated that he had taken into consideration as much as possible the circumstance of the Property's relatively poor location. Leonard conceded before the Commission that the 5-percent vacancy rate used in the original appraisal was in error and that a 10- to 15-percent vacancy rate should be used. The Partnership does not take issue directly with the revised vacancy rate. Finally, Leonard testified that his testimony conformed with standard and recognized appraisal practices.

■ Following the hearing, the Commission rejected the Partnership's proposed valuation because the Commission found that it was derived from an impermissible mix of actual figures and mass appraisal statistics. Given the expertise of the members of the Commission, the Commission is authorized by Neb. Rev. Stat. § 77-5016(5) (Reissue 1996) to "utilize its experience, technical competence, and specialized knowledge in the evaluation of the evidence presented to it." We do not find error on the record in connection with the Commission's finding.

With respect to Leonard's valuation based on the income approach, there is competent evidence to support a finding that

Leonard used the income approach, and the evidence did not establish an error by Leonard in the application of the income approach. We conclude that in view of Leonard's testimony, the Commission's decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. The Partnership's assignment of error regarding economic rent is without merit.

*Capitalization Rate.*

The Partnership argues generally that the Commission erred in not adjusting the capitalization rate upward to give the Property a lower valuation. Specifically, the Partnership claims on appeal that the base capitalization rate is too low.

The record contains a copy of the "Final Determination" of the Board, in which the Board adopted the assessor's proposed valuation of $1,478,620 and stated: "Review of the county valuation has been completed. Appraisal methods/techniques were appropriately applied. The estimate of market value is reasonable and within the scope of sound appraisal practice." In view of the Partnership's appeal filed with the Commission challenging the capitalization rate, Clatterbuck was asked at the hearing before the Commission if he had provided the Board "with a different cap rate or information to justify a different cap rate" when the Board had heard the Partnership's protest. Clatterbuck responded, "No, I did not."

According to the record, the issue of the appropriate capitalization rate was not presented to the Board. Pursuant to § 77-1511, the Commission shall "determine anew all questions raised before the county board of equalization . . . ." Furthermore, 442 Neb. Admin. Code, ch. 3, § 001.04 (1996), states that the Commission has no authority to consider questions not raised before a county board of equalization. See, also, *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal.*, 243 Neb. 351, 500 N.W.2d 520 (1993) (only tax liability questions raised before board of equalization are questions for adjudication by district court in its appellate jurisdiction). Because the question of the proper capitalization rate was not presented to or raised before the Board for a ruling, it was not properly before the Commission or before this court on appeal. See *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997).

## CONCLUSION

The Commission's order reversing the Board's decision regarding valuation of the Property is affirmed.

AFFIRMED.