US ECOLOGY, INC., APPELLANT, V. BOYD COUNTY BOARD OF EQUALIZATION, BOYD COUNTY, NEBRASKA, APPELLEE.

578 N.W. 2d 877

Filed May 5, 1998. No. A-97-802.

Steven G. Seglin, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

Carl Schuman, Boyd County Attorney, for appellee.

MILLER-LERMAN, Chief Judge, and SIEVERS and INBODY, Judges.

INBODY, Judge.

## INTRODUCTION

US Ecology, Inc., appeals the July 8, 1997, decision of the Nebraska Tax Equalization and Review Commission (Commission) affirming the increase in the valuation of real property owned by US Ecology by the Boyd County Board of Equalization (Board) from $113,785 to $320,000. For the reasons set forth herein, we reverse, and remand for further proceedings.

## STATEMENT OF FACTS

US Ecology is a California corporation engaged in radioactive and hazardous waste handling, processing, and disposal. An investigation was conducted by US Ecology and its subcontractors throughout Nebraska to locate an appropriate site for a low-level radioactive waste facility pursuant to US Ecology's exclusive contract with the Central Interstate Compact Commission. This investigation disclosed approximately 80 sections of land suitable for such a venture, including the approximately 320 acres of land legally described as "The East One-Half of Section Thirteen (13), Township Thirty-four (34) North, Range Fourteen (14) West of the 6th Principal Meridian, [in Boyd County, Nebraska,] [e]xcept a tract of land located in the South One-Half of the Southeast Quarter (S½SE¼) . . . ." This property will hereinafter be referred to as the "subject property."

In July 1990, US Ecology purchased the subject property. Because of the suitability of this particular property as a location for a low-level radioactive waste facility, US Ecology paid a premium for the land, slightly more than $1,000 per acre, for a total purchase price of $320,000, when similar land was selling for approximately $400 per acre.

From 1990 through 1995, the subject property had been assessed as agricultural land, with a 1995 assessed value of $113,785. However, in 1996, the Board determined that the land should no longer be assessed as agricultural land and increased its assessed value to $320,000. US Ecology timely appealed this determination to the Commission.

On July 2, 1997, a hearing was held before the Commission. The Board introduced into evidence five exhibits: the July 1990 deed transferring title of the subject property to US Ecology; the option contract between US Ecology and the seller; the minutes from the Board's July 22, 1996, meeting; and tax assessments of a licensed landfill facility in Dakota County and an up-and-running hazardous waste facility in Kimball County.

US Ecology called two witnesses at the hearing: John DeOld, project manager since the summer of 1988 for US Ecology's central interstate project, and Wayne Kubert, a real estate appraiser. DeOld testified that in July 1990, US Ecology submitted its application for the required operating license from the State of Nebraska, which set forth that only about 110 acres will be used for the actual waste disposal operation, with the remaining acres probably to be used for site-monitoring and similar purposes. The application had not been approved as of the date of the hearing, and the earliest that US Ecology could get license approval, if it was to be successful, would be the last few months of 1999. Furthermore, US Ecology does not know with any degree of certainty that it will receive a license for the proposed Boyd County facility.

DeOld testified that for the first year after US Ecology purchased the subject property, a tenant farmer already using the site continued farming the property. Since that time, US Ecology has been conducting on-site environmental monitoring activities, including ground water and atmospheric studies and measurements of soil and vegetation quality, to establish a base-

line of information showing the condition of the property with respect to any hazardous or radiological material that might be found on the site. Finally, DeOld testified that in his opinion, the reasonable market value of the property on January 1, 1996, and continuing up to the date of the hearing was approximately $450 per acre.

US Ecology's second and final witness was Kubert, a real estate appraiser. Kubert testified that because of the uncertainty regarding the acceptance of US Ecology's license application, the highest and best use of the subject property is for agricultural purposes. He performed an appraisal of the property using the market or comparative value approach. In doing so, he considered the value of a 150-square-foot concrete building which US Ecology had built on the land. Additionally, there was evidence presented that US Ecology has installed approximately 50 wells on the property for the purpose of measuring ground water flow and monitoring water quality, moved two leased mobile-home-type trailers onto the property, and built or maintained a rudimentary road system.

Kubert valued the property at $154,710 and the improvements at $11,290, for a total of $166,000. Valuing the subject property at 80 percent, which is the way agricultural land is valued, the subject property has a value of $123,710 and the improvements are valued at $11,290, with the total value at $135,000. Kubert then testified that he also analyzed the value of the subject property based upon the Boyd County Assessor's value for each type of soil type and land use to get an 80-percent land value of $102,495, plus improvements valued at $11,290, for a total value of $113,785, which was the assessed value of the subject property prior to July 22, 1996.

At the close of US Ecology's case, the Board moved to dismiss the case, alleging that US Ecology failed to adduce evidence establishing that the action taken by the Board was unreasonable or arbitrary, as required by Neb. Rev. Stat. § 77-1511 (Reissue 1996). The Commission filed a decision setting forth its findings of fact and conclusions of law as required by Neb. Rev. Stat. § 77-5018 (Supp. 1997).

Summarized, the Commission's findings of fact are as follows: US Ecology failed to present credible evidence to support

its claim that the Board's valuation of the property was unreasonable or arbitrary. The Commission found that DeOld's opinion of value of the subject property was unsupported by the evidence and that Kubert's appraisal was not credible evidence of the value of the subject property because (1) the appraisal determined that the highest and best use of the subject property was as agricultural land; (2) the subject property cannot be used as agricultural land under the provisions of Neb. Const. art. XII, § 8, and consequently cannot be valued as such; (3) the appraisal was based on the sales comparison approach, no consideration was given to the income approach, and standard appraisal practices dictate that a second approach to value is essential to support the opinion of value; and (4) US Ecology has expended more than $80 million in testing and application proceedings in order to obtain a radioactive and hazardous waste processing facility license.

Thus, the Commission granted the Board's motion for dismissal and affirmed the Board's determination, finding that there was no showing that the Board's valuation was unreasonable or arbitrary and that the evidence adduced at the hearing established that the value of the property was "at least $320,000.00." US Ecology timely appealed to this court.

## ASSIGNMENTS OF ERROR

On appeal, US Ecology has identified seven assignments of error, which can be consolidated into the following two issues: (1) The Commission erred in finding that since the subject property cannot be used as agricultural land under the Nebraska Constitution, the subject property cannot be valued as agricultural land pursuant to the provisions of Neb. Rev. Stat. § 77-1343 (Reissue 1996) and related statutes, and (2) the Commission erred in finding that US Ecology failed to meet its burden of establishing that the valuation of the subject property as assessed by the Board was unreasonable or arbitrary.

## STANDARD OF REVIEW

■ Any person aggrieved by a final decision in a case appealed to the Commission, "whether the decision is affirmative or negative in form, shall be entitled to judicial review in

the [Nebraska] Court of Appeals." Neb. Rev. Stat. § 77-5019(1) (Reissue 1996).

 In an appeal from the Commission, the appellate court reviews for errors appearing on the record of the Commission. § 77-5019(5). When reviewing an order for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Harrison Square v. Sarpy Cty. Bd. of Equal.*, 6 Neb. App. 454, 574 N.W.2d 180 (1998). This court may affirm, reverse, or modify the decision of the Commission or remand the cause for further proceedings. § 77-5019(5).

## ANALYSIS

*Transcript of Hearing Before Board.*

At the threshold, we note that the Board's brief cites to the transcript of the July 22, 1996, meeting before the Board which was attached to its answer and incorporated by reference. However, the transcript of the Board meeting is not included in the bill of exceptions.

 "A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered." *Huddleson v. Abramson*, 252 Neb. 286, 288, 561 N.W.2d 580, 582 (1997). See, also, *Brierly v. Federated Finance Co.*, 168 Neb. 725, 97 N.W.2d 253 (1959) (affidavit contained in transcript but not preserved in bill of exceptions cannot be considered). Accordingly, we cannot, should not, and do not further consider the transcribed testimony of that meeting.

We may, however, consider the minutes of the Board's meeting which were offered and received into evidence at the hearing before the Commission. The portion of the Board's minutes dealing with the increase in valuation of the subject property is as follows:

> The classification of the E1/2 of Sec. 13, T34, R14 was discussed. Supervisor Bentzen presented laws pertaining to assessing this property which the clerk read. Sites at Kimball and Dakota County were compared. Discussion followed on the price paid for land, how many total acres,

acres being considered for licensing, the fact that the land is no longer farmed and if it should be considered as agriculture land. Mr. DeOld stated that although $75 to $80 million has been spent on the project, all of this money is not out on the site. Motion by Bentzen, second Mashino to set value of this parcel of land at $320,000.00. Ayes: Nelson, Mashino, Purviance, Boettcher, Luber, Bentzen. Absent: Reiser. Motion carried.

This said, we now proceed to dispose of the case before us.

*Unreasonable or Arbitrary.*

US Ecology assigns as error the Commission's finding that the Board's assessed valuation of the subject property was not unreasonable or arbitrary.

In its review of the Board's decision to increase the valuation of the subject property, the Commission heard the appeal from the Board as in equity and without a jury and determined anew all questions raised before the Board which related to the liability of the property to assessment, or the amount thereof. See § 77-1511. See, also, Neb. Rev. Stat. § 77-5007 (Reissue 1996). The action taken by the Board was to be affirmed by the Commission unless evidence was adduced establishing that the action of the Board was unreasonable or arbitrary or unless evidence was adduced establishing that the subject property was assessed too low. See § 77-1511.

One of the reasons articulated by the Commission for its determination that the Board's valuation of the subject property at $320,000 was not unreasonable or arbitrary was that the subject property could not be used as agricultural land under the provisions of Neb. Const. art. XII, § 8, and that consequently, the land could not "be valued as agricultural land pursuant to the provisions of [§ 77-1343] and related statutes." According to the record in this case, the issue of whether the provisions of Neb. Const. art. XII, § 8, prohibit the classification of the subject property as agricultural property under § 77-1343 was not presented to the Board.

A similar factual situation occurred in the recent Court of Appeals case *Harrison Square v. Sarpy Cty. Bd. of Equal.*, 6 Neb. App. 454, 574 N.W.2d 180 (1998). In *Harrison Square*,

Harrison Square Partnership appealed a decision by the Sarpy County Board of Equalization regarding the valuation of a certain commercial property owned by the partnership. One of the assigned errors on appeal was that the Commission erred in not adjusting the capitalization rate upward to give the property a lower valuation. In affirming the order of the Commission, the Court of Appeals stated:

> According to the record, the issue of the appropriate capitalization rate was not presented to the Board. Pursuant to § 77-1511, the Commission shall "determine anew all questions raised before the county board of equalization . . . ." Furthermore . . . the Commission has no authority to consider questions not raised before a county board of equalization. [Citation omitted.] Because the question of the proper capitalization rate was not presented to or raised before the Board for a ruling, it was not properly before the Commission or before this court on appeal. See *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997).

*Harrison Square*, 6 Neb. App. at 460, 574 N.W.2d at 185.

In the case at bar, the question of the applicability of art. XII, § 8, of the Nebraska Constitution was not presented to or raised before the Board for a ruling, and thus, this issue was not properly before the Commission and the Commission had no authority to consider it. Consequently, the Commission erred when it considered the applicability of art. XII, § 8, of the Nebraska Constitution in determining whether the action of the Board was unreasonable or arbitrary.

■ Despite the Commission's erroneous consideration of the constitutional issue, we proceed to consider whether after considering the proper evidence, the Commission erred in determining that US Ecology failed to establish that the Board's valuation of the subject property was arbitrary and capricious. In so doing, we are mindful that the appellant, US Ecology, bears the burden of proving that the value of the subject property has been arbitrarily or unlawfully fixed by the board of equalization in an amount greater than its actual value. See *Future Motels, Inc. v. Custer Cty. Bd. of Equal.*, 252 Neb. 565, 563 N.W.2d 785 (1997).

The Commission disregarded the evidence presented by US Ecology at the hearing, finding that "there is no credible evidence from [US Ecology] which establishes that the value of the subject property for tax year 1996, was unreasonable or arbitrary." Instead, the Commission found that the evidence before it established that "the fair market value of the subject property as of January 1, 1996, was at <u>least</u> $320,000.00." This determination was apparently based upon the facts that the subject property had been purchased in 1989 for $320,000 and that US Ecology had "expended more than $80,000,000.00 in testing and application proceedings in order to obtain a radioactive and hazardous waste processing facility license." We disagree.

At the hearing before the Commission, US Ecology presented opinion evidence by DeOld, the project manager, that the reasonable market value of the property on January 1, 1996, and continuing up to the date of the hearing was approximately $450 per acre. That a resident owner who is familiar with his property and knows its worth is permitted to testify as to its value without further foundation rests upon the owner's familiarity with the property's characteristics, its actual and potential uses, and the owner's experience in dealing with it. *Johnson's Apco Oil Co. v. City of Lincoln*, 204 Neb. 397, 282 N.W.2d 592 (1979).

DeOld's testimony established that he had been employed as project manager for the subject property since 1988, that he is in charge of all aspects of the project, that he was involved in the negotiations to purchase the subject property, that the subject property was located in an area which had been determined to be suitable for development of a low-level radioactive waste disposal facility, that the landowner of the subject property was willing to sell for $1,000 per acre, that US Ecology realized that it was paying a premium for the property, and that DeOld made an investigation into the market value of real estate in the area at the time and found that similar property sold for $400 per acre. DeOld then testified, without objection, that in his opinion the subject property had a market value of $450 per acre at the date of the hearing. Sufficient foundation was established setting forth DeOld's familiarity with the subject property to allow him to testify as to the market value of the subject property as

of the date of the hearing, and the Commission erred in disregarding this evidence.

Furthermore, we find that the Commission erred in disregarding US Ecology's evidence and the testimony by the real estate appraiser, Kubert. In tax valuation cases, actual value is largely a matter of opinion and without a precise yardstick for determination with complete accuracy. *Dowd v. Board of Equal.*, 240 Neb. 437, 482 N.W.2d 583 (1992).

The Board stipulated that Kubert was an expert and did not object to Kubert's testimony that he valued the property at $154,710 and the improvements at $11,290, for a total of $166,000. Kubert also testified that he also analyzed the value of the subject property based upon the Boyd County Assessor's value for each type of soil type and land use to get an 80-percent land value of $102,495, plus improvements valued at $11,290, for a total value of $113,785, which was the assessed value of the subject property prior to July 22, 1996. Consequently, the Commission erred in disregarding Kubert's appraisal of the subject property.

Finally, we address the Commission's reliance upon the purchase price of the subject property. The record clearly sets forth that US Ecology paid $320,000 for the subject property, or slightly more than $1,000 per acre. The record is equally clear that US Ecology paid a premium for the subject property.

The sale price and the earning capacity of a property are only factors to be considered in determining actual value or fair market value. *Potts v. Board of Equalization,* 213 Neb. 37, 328 N.W.2d 175 (1982).

In considering the relation between the 1989 purchase price of the subject property and the change in tax valuation which occurred in 1996, we find it interesting that from 1990 through 1995, the subject property was not valued at the purchase price, but instead had been valued at $113,785. In addition, we consider the 1989 $320,000 purchase price of the subject property too remote in time to be determinative of the market value of the subject property in 1996. Finally, there was no evidence of an event in the year leading up to the 1996 valuation which would establish the propriety of the nearly threefold increase in the valuation of the subject property.

Additionally, although US Ecology has expended more than $80 million in its attempt to secure a license for the low-level radioactive waste disposal facility, the fact remains that US Ecology does not know with any degree of certainty that it will receive a license for the proposed facility. Plainly and simply stated, unless and until a license has been secured, the amounts expended by US Ecology in its attempt to secure the license are not indicative of the actual or fair market value of the subject property.

In sum, we find that US Ecology met its burden to put forth sufficient evidence to establish that the Board acted arbitrarily and capriciously.

*Agricultural Valuation.*

US Ecology argues that the Commission erred in finding that since the subject property cannot be used as agricultural land under the Nebraska Constitution, the subject property cannot be valued as agricultural land pursuant to the provisions of § 77-1343 and related statutes.

Neb. Rev. Stat. § 77-201 (Reissue 1996) provides, in pertinent part:

(1) Except as provided in subsection (2) of this section, all real property in this state, not expressly exempt therefrom, shall be subject to taxation and shall be valued at its actual value.

(2) Agricultural land and horticultural land used solely for agricultural or horticultural purposes shall constitute a separate and distinct class of property for purposes of property taxation, shall be subject to taxation, unless expressly exempt from taxation, and shall be valued at its taxable value.

US Ecology admits that it does not use the land for agriculture and thus is not entitled to the special tax treatment accorded land used solely for agricultural or horticultural purposes. Instead, US Ecology contends that the subject property is agricultural property not used for agricultural or horticultural purposes and thus, that it should be valued at 100 percent of its actual value. US Ecology contends that the correct valuation of the subject property is $166,000, which represents 100-percent actual value as agricultural land.

■ Neb. Rev. Stat. § 77-112 (Reissue 1996) provides:

(1) Actual value of real property for purposes of taxation shall mean the market value of real property in the ordinary course of trade. Actual value may be determined using professionally accepted mass appraisal techniques, including, but not limited to:

(a) Comparison with sales of real property of known or recognized value, taking into account location, zoning, and current functional use;

(b) Earning capacity of the real property; and

(c) Reproduction cost less depreciation.

(2) Taxable value of agricultural land and horticultural land for purposes of taxation shall mean the value determined pursuant to sections 77-1359 to 77-1365.

■ In the instant case, the subject property is agricultural land, but it is not being used for agricultural or horticultural purposes and is not entitled to the special tax treatment accorded land used solely for agricultural or horticultural purposes. Therefore, the subject property is to be valued at 100 percent of its actual value.

## CONCLUSION

US Ecology presented sufficient evidence before the Commission to establish that the Board acted arbitrarily and capriciously in valuing the subject property. Additionally, the Board erred in considering the applicability of Neb. Const. art. XII, § 8, since the issue of the applicability of the constitutional provision had not been raised before the Board. Finally, because the subject property is agricultural property, but is not being used for agricultural or horticultural purposes, the subject property is to be valued at 100 percent of its actual value. For the reasons set forth, the decision of the Commission affirming the determination by the Board is reversed, and the cause is remanded to the Commission for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.