US ECOLOGY, INC., APPELLANT, V. BOYD COUNTY BOARD OF EQUALIZATION, BOYD COUNTY, NEBRASKA, APPELLEE.

588 N.W. 2d 575

Filed January 29, 1999.   No. S-97-802.

Steven G. Seglin, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

Carl Schuman, Boyd County Attorney, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

This case involves a dispute with regard to the valuation for purposes of taxation of a tract of land in Boyd County which US Ecology, Inc., purchased in July 1990 for $320,000 as a potential site for a low-level radioactive waste disposal facility. From 1990 through 1995, the assessed value of the land was never more than $113,875, but in 1996 the Boyd County Board of Equalization (Board) increased the valuation to $320,000. US Ecology appealed to the Nebraska Tax Equalization and Review Commission (TERC), which affirmed the Board's 1996 valuation based upon a 2-to-1 determination that US Ecology failed to prove that the Board acted arbitrarily or capriciously in increasing the valuation for 1996. US Ecology sought review by

the Nebraska Court of Appeals, which reversed, based upon its determination that there was sufficient evidence to establish that the Board had acted arbitrarily and capriciously in establishing the 1996 valuation. The Court of Appeals further determined that the property was agricultural land not being used for agricultural purposes and therefore should be valued at 100 percent of its actual value. It reversed, and remanded the cause to the TERC for further proceedings consistent with the Court of Appeals' opinion. *US Ecology v. Boyd Cty. Bd. of Equal.*, 6 Neb. App. 956, 578 N.W.2d 877 (1998). We granted the Board's petition for further review and now affirm the judgment of the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize the facts and procedural background of this case which are set forth in greater detail in the published opinion of the Court of Appeals. US Ecology is a California corporation engaged in radioactive and hazardous waste handling, processing, and disposal. In July 1990, it purchased the subject property in Boyd County because of its suitability as a site for a low-level radioactive waste disposal facility which US Ecology intends to build and operate if it obtains the necessary license from the State of Nebraska. See Neb. Rev. Stat. § 81-1578 et seq. (Reissue 1994 & Cum. Supp. 1998). The license application has been pending since 1990. The subject property consists of approximately 317.99 acres located 3 miles west of Butte, Nebraska. If the license is obtained, approximately 110 acres of the subject property will be used for construction of the actual facility and the remaining acres will be used for site-monitoring and testing. Since 1989, between $82 and $83 million has been spent on the project to develop the waste disposal facility in Boyd County. However, the only improvements on the proposed site include a small structure, several monitoring wells, and other technical improvements used for testing for the anticipated future use of the property.

US Ecology paid approximately $1,000 per acre for the subject property. At the time of purchase, it was aware that similar property was selling for about $400 per acre; however, it was willing to pay a premium price because of the suitability of the

property as a potential site for the waste disposal facility. Although it had previously been used as farmland, the subject property has not been used for agricultural purposes since 1990.

From 1990 through 1995, the subject property was assessed as agricultural land, and its highest assessed value during this period was $113,785 in 1995. However, on July 22, 1996, the Board determined that the assessed value should be increased to $320,000. US Ecology perfected a timely appeal to the TERC pursuant to Neb. Rev. Stat. § 77-1510 (Reissue 1996). The TERC held a hearing at which counsel for the Board and US Ecology appeared. The Board did not call any witnesses but offered five exhibits which included the minutes of its July 22 meeting, the option contract pursuant to which US Ecology purchased the subject property, the July 1990 deed transferring title of the subject property to US Ecology, and tax-assessment documents pertaining to a licensed landfill facility in Dakota County and an operational hazardous waste disposal facility in Kimball County.

US Ecology called two witnesses, John DeOld and Wayne Kubert. Since 1988, DeOld has been employed by US Ecology as manager for its Nebraska Central Interstate project. His duties include management of US Ecology's efforts to comply with contracts which it has with the Central Interstate Compact Commission to site, develop, license, operate, and close the low-level radioactive waste disposal facility for which the subject property is the proposed site. He stated that a decision on the pending license application was expected no earlier than the last few months of 1999 and that US Ecology did not know with any degree of certainty whether it would ever receive a license for the proposed facility. DeOld testified that since the cessation of farming operations on the property in 1990, US Ecology has been conducting on-site environmental and monitoring activities, including ground water and atmosphere studies to establish a baseline of information showing the condition of the property with respect to any hazardous or radiological materials that may be found on the site. He stated that the subject property is primarily grassland and that US Ecology pays to have the grass mowed and hauled away once or twice a year. DeOld testified

that in his opinion, the property had a fair and reasonable market value of $450 per acre on January 1, 1996.

Wayne Kubert, a real estate appraiser retained by US Ecology, also testified as a witness before the TERC. Kubert stated that because of the uncertainty regarding the acceptance of US Ecology's license application, the highest and best use of the property in 1996 was for agricultural purposes. Kubert performed an appraisal of the property using the market or comparative value approach. He determined that the real property should be valued at $154,710 and improvements at $11,290, for a total of $166,000. Valuing the property at 80 percent, which is the way agricultural land is valued, the property had a value of $123,710 and the improvements a value of $11,290, for a total value of $135,000. Kubert certified that in conducting the appraisal he complied with the "Uniform Standards of Professional Practice . . . as promulgated by the Appraisal Foundation."

At the close of US Ecology's case, the Board made a motion to dismiss the case, alleging that US Ecology failed to establish a reasonable basis upon which the TERC could reverse the action of the Board. The TERC filed a decision setting forth its findings of fact and conclusions of law as required by Neb. Rev. Stat. § 77-5018 (Cum. Supp. 1998).

The TERC found, in summary, that US Ecology failed to present credible evidence to support its claim that the Board's valuation of the property was unreasonable or arbitrary. The TERC found that DeOld's opinion regarding the value of the property was unsupported by the evidence. It further found that Kubert's appraisal was not credible evidence of the value of the property because (1) the appraisal determined that the highest and best use of the property was as agricultural land; (2) the property cannot be used as agricultural land under the provisions of Neb. Const. art. XII, § 8, and consequently cannot be valued as such; (3) the appraisal was based on the sales comparison approach and no consideration was given to the income approach, although standard appraisal practices dictate that a second approach to value is essential to support the opinion; and (4) US Ecology expended more than $80 million in testing and appli-

cation proceedings in order to obtain a license for its radioactive and hazardous waste processing facility. Thus, the TERC granted the Board's motion for dismissal and affirmed the Board's determination, finding there was no showing that the Board's valuation was unreasonable or arbitrary. US Ecology timely appealed to the Court of Appeals.

The Court of Appeals determined that the TERC erred in disregarding the testimony of DeOld and Kubert regarding the value of the subject property. *US Ecology v. Boyd Cty. Bd. of Equal.*, 6 Neb. App. 956, 578 N.W.2d 877 (1998). The court also held that the TERC improperly considered the constitutional prohibition of corporate ownership of farmland because that issue was not raised before the Board. *Id.* The Court of Appeals concluded that the subject property was agricultural land not being used for agricultural or horticultural purposes and, thus, was to be valued at 100 percent of its actual value. It therefore reversed the decision of the TERC affirming the determination of the Board, and remanded the cause to the TERC for further proceedings consistent with its opinion. *Id.*

ASSIGNMENTS OF ERROR

In its opinion, the Court of Appeals summarized US Ecology's assignments of error with respect to the determination of the TERC as follows:

> (1) The [TERC] erred in finding that since the subject property cannot be used as agricultural land under the Nebraska Constitution, the subject property cannot be valued as agricultural land pursuant to the provisions of Neb. Rev. Stat. § 77-1343 (Reissue 1996) and related statutes, and (2) the [TERC] erred in finding that US Ecology failed to meet its burden of establishing that the valuation of the subject property as assessed by the Board was unreasonable or arbitrary.

*US Ecology v. Boyd Cty. Bd. of Equal.*, 6 Neb. App. at 961, 578 N.W.2d at 881-82.

In its petition for further review, the Board asserts that the Court of Appeals erred (1) by failing to hold that US Ecology bears the burden of proving by "credible" evidence that the value of the property has been arbitrarily or unlawfully fixed by

the Board in an amount greater than its actual value and (2) by failing to hold that when credible evidence conflicts on appeal from a county board of equalization, an appellate court may give weight to the fact that the TERC observed the witnesses and accepted one version of the facts over the other.

## SCOPE OF REVIEW

An appeal may be taken from any action of a county board of equalization to the TERC in accordance with the TERC Act (TERCA). § 77-1510. The TERCA, which is currently codified at Neb. Rev. Stat. §§ 77-5001 to 77-5031 (Reissue 1996 & Cum. Supp. 1998), originally became effective on January 1, 1996, and at the time of the instant action, was codified at Neb. Rev. Stat. §§ 77-5001 to 77-5021 (Reissue 1996). The TERC shall hear such appeals

> as in equity and without a jury and determine anew all questions raised before the county board of equalization which relate to the liability of the property to assessment, or the amount thereof. The [TERC] shall affirm the action taken by the board unless evidence is adduced establishing that the action of the board was unreasonable or arbitrary or unless evidence is adduced establishing that the property of the appellant is assessed too low.

Neb. Rev. Stat. § 77-1511 (Reissue 1996).

Any person aggrieved by a final decision in a case appealed to the TERC, whether the decision is affirmative or negative in form, shall be entitled to judicial review in the Court of Appeals. § 77-5019(1). In such an appeal, the Court of Appeals reviews for errors appearing on the record of the TERC. § 77-5019(5). When reviewing an order for errors appearing on the record, the appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Douglas Cty. Sch. Dist. 001 v. Dutcher*, 254 Neb. 317, 576 N.W.2d 469 (1998).

## ANALYSIS

This is the first case in which we have reviewed a decision of the Court of Appeals arising under the TERCA. Review of such actions by this court is not a matter of right, but is governed by

Neb. Rev. Stat. § 24-1107 (Reissue 1996) and Neb. Ct. R. of Prac. 2F, pursuant to which this court may in its discretion grant further review of a decision of the Court of Appeals upon petition of a party. Therefore, our task is to determine whether the Court of Appeals correctly reviewed the cause for errors appearing on the record of the TERC, as required by § 77-5019(5). Our review is further narrowed by our established rule that we will not consider errors which are not properly assigned in a petition for further review and discussed in the supporting memorandum brief, unless plain error exists. *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998); *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993). In this context, "plain error" exists where there is

> an error in an opinion of the Court of Appeals concerning which no complaint is made in a petition for further review, but which is encompassed within the errors raised before the Court of Appeals and which, if uncorrected, would result in an erroneous direction for retrial of a cause
> . . . .

*Id.* at 691, 502 N.W.2d at 433. We find no plain error on the record of this case and, therefore, address only the two assignments of error specified and argued in the petition for further review and supporting brief.

In its first assignment, the Board challenges the statement of the Court of Appeals that as the appellant in proceedings before the TERC, US Ecology had "the burden of proving that the value of the subject property has been arbitrarily or unlawfully fixed by the board of equalization in an amount greater than its actual value." *US Ecology v. Boyd Cty. Bd. of Equal.*, 6 Neb. App. 956, 964, 578 N.W.2d 877, 883 (1998). The Board argues that US Ecology should have been specifically required to meet its burden of proof *by competent evidence.* To resolve this question, we first examine the applicable statutory language.

US Ecology's appeal to the TERC was governed by § 77-1511, which requires the TERC to affirm action taken by a board of equalization "unless evidence is adduced establishing that the action of the board was unreasonable or arbitrary or unless evidence is adduced establishing that the property of the appellant is assessed too low." Prior to the enactment of the TERCA,

Nebraska law provided that appeals from actions taken by a county board of equalization were to be taken to the district courts, which had the same statutory scope of review which § 77-1511 now confers upon the TERC. §§ 77-1510 and 77-1511 (Reissue 1990). We held that in such appeals,

> [t]here is a presumption that a board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence to the contrary presented, and the presumption disappears when there is competent evidence adduced on appeal to the contrary. From that point forward, the reasonableness of the valuation fixed by the board of equalization becomes one of fact based upon all the evidence presented. The burden of showing such valuation to be unreasonable rests upon the taxpayer on appeal from the action of the board.

*Ideal Basic Indus. v. Nuckolls Cty. Bd. of Equal.*, 231 Neb. 653, 654-55, 437 N.W.2d 501, 502 (1989). In rebutting the aforementioned presumption,

> the burden of persuasion imposed on the complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon his property when compared with valuations placed on other similar property is grossly excessive and is the result of a systematic exercise of intentional will or failure of plain duty, and not mere errors of judgment.

*Bumgarner v. County of Valley*, 208 Neb. 361, 366, 303 N.W.2d 307, 310 (1981). Although it did not specifically adopt these rules in the present case, the Court of Appeals did so in subsequent cases in which it considered appeals from the TERC. See, *Forney v. Box Butte Cty. Bd. of Equal.*, 7 Neb. App. 417, 582 N.W.2d 631 (1998); *Lancaster Cty. Bd. of Equal. v. Condev West, Inc.*, 7 Neb. App. 319, 581 N.W.2d 452 (1998); *Bottorf v. Clay Cty. Bd. of Equal.*, 7 Neb. App. 162, 580 N.W.2d 561 (1998). We agree that these principles define the burden of persuasion in appeals to the TERC.

The central issue of fact in this case is the actual value of the subject property in 1996. "Actual value of real property for purposes of taxation shall mean the market value of real property in the ordinary course of trade." Neb. Rev. Stat. § 77-112 (Reissue 1996). We agree with the determination of the Court of Appeals that the TERC erred in disregarding DeOld's testimony that in his opinion, the subject property had an actual value of $450 per acre. This testimony constituted competent evidence under the rule that an owner who is familiar with his property and knows its worth is permitted to testify as to its value. *McArthur v. Papio-Missouri River NRD*, 250 Neb. 96, 547 N.W.2d 716 (1996); *Johnson's Apco Oil Co. v. City of Lincoln*, 204 Neb. 397, 282 N.W.2d 592 (1979). See, also, *Chudomelka v. Board of Equalization*, 187 Neb. 542, 544, 192 N.W.2d 403, 405 (1971) (holding lay witness may testify as to value of property if he or she has "an acquaintance with the property" and is "informed as to the state of the market").

We also agree with the Court of Appeals' determination that the TERC erred in disregarding the testimony of Kubert, whose expertise as a real estate appraiser was stipulated to by the Board. Actual value of real property for purposes of taxation "may be determined using professionally accepted mass appraisal techniques, including, but not limited to: (a) Comparison with sales of real property of known or recognized value, taking into account location, zoning, and current functional use; (b) Earning capacity of the real property; and (c) Reproduction cost less depreciation." § 77-112(1). This statute does not require use of all the specified factors, but requires use of applicable statutory factors, individually or in combination, to determine actual value of real estate for tax purposes. *Dowd v. Board of Equal.*, 240 Neb. 437, 482 N.W.2d 583 (1992); *First Nat. Bank v. Otoe Cty.*, 233 Neb. 412, 445 N.W.2d 880 (1989). Kubert testified that he used the sales comparison approach but did not use an income analysis because "buyers and sellers of farmland do not attach great significance to the net income produced." Thus, Kubert used one of the statutorily prescribed methods in arriving at his appraisal of the subject property and articulated a reason why another was inapplicable. His appraisal

was therefore competent evidence which was entitled to weight in determining the actual value of the subject property.

We have recognized that in tax valuation cases, actual value is largely a matter of opinion and without a precise yardstick for determination with complete accuracy. *Dowd v. Board of Equal., supra*; *First Nat. Bank v. Otoe Cty., supra*. The opinions of DeOld and Kubert that the actual value of the subject property was less than 50 percent of the 1996 valuation determined by the Board constituted competent evidence which caused the presumption of validity of the Board's valuation to disappear. Therefore, the reasonableness of the Board's valuation was a question of fact based upon all the evidence presented, with US Ecology having the burden of showing such valuation to be unreasonable. See *Ideal Basic Indus. v. Nuckolls Cty. Bd. of Equal.*, 231 Neb. 653, 437 N.W.2d 501 (1989). As discussed below, the testimony of DeOld and Kubert is the only competent evidence of actual value contained in this record.

In its second assignment of error, the Board argues that the Court of Appeals erred "by failing to hold that when credible evidence conflicts on appeal from the County Board of Equalization the Appellate Court may give weight to the fact that the [TERC] observed the witnesses and accepted one version of the facts over the other." Memorandum brief for appellee in support of petition for further review at 3. In this case, however, the facts presented by US Ecology are essentially undisputed. At the hearing before the TERC, the Board did not call any witnesses or offer any professional appraisal of the subject property. Its evidence consisted entirely of five exhibits, which included copies of the option agreement and warranty deed through which US Ecology acquired title, a document showing the taxable valuation of the subject property for the years 1990 through 1995, the minutes of the meeting at which the Board set the 1996 valuation, and documents reflecting the valuation of a licensed landfill in Dakota County and a waste treatment facility in Kimball County. These exhibits do not contain facts which support the 1996 valuation set by the Board or contradict the evidence presented by US Ecology.

For example, there is no evidence contradicting Kubert's testimony that the subject property was used exclusively for agri-

cultural purposes prior to its acquisition by US Ecology. We agree with the determination of the Court of Appeals that the applicability of art. XII, § 8, of the Nebraska Constitution was not raised before the Board and therefore could not have been considered by the TERC under § 77-1511. See *US Ecology v. Boyd Cty. Bd. of Equal.*, 6 Neb. App. 956, 578 N.W.2d 877 (1998). Without deciding the issue, we question whether a county board of equalization or the TERC could ever adjudicate issues involving art. XII, § 8, which contains specific provisions for judicial determination of compliance and enforcement. See *Hall v. Progress Pig, Inc.*, 254 Neb. 150, 575 N.W.2d 369 (1998).

The record contains uncontroverted evidence that the expenditure of funds by US Ecology on site-testing and licensing did not add value to the land and that at the present time, it would be virtually impossible to sell the property as a site for a radioactive waste disposal facility. Likewise, the record discloses no correlation between the value of the subject property and the Dakota County and Kimball County properties. Thus, the Court of Appeals' determination that the subject property should be considered agricultural property which is not currently being used for agricultural purposes is supported by uncontroverted evidence.

The purchase price of property, standing alone, is not conclusive of the actual value of the property for assessment purposes; it is only one factor to be considered in determining actual value. *Potts v. Board of Equalization*, 213 Neb. 37, 328 N.W.2d 175 (1982). The record contains no evidence contradicting DeOld's testimony that US Ecology paid what it knew was a premium price of approximately $1,000 per acre for the property in 1990, nor is there evidence of circumstances which would explain the increase in valuation from $113,785 in 1995 to $320,000 in 1996. The statutory measure of actual value is not what an individual buyer may be willing to pay for property, but, rather, its "market value . . . in the ordinary course of trade." § 77-112. On this record, therefore, we agree with the Court of Appeals' determination that the 1989 purchase price of $320,000 was not determinative of the market value of the subject property in 1996.

In sum, the record contains no facts which would justify setting the 1996 actual value of the subject property at nearly three times its 1995 valuation and more than twice the value established by the only appraisal contained in the record. Thus, we conclude that under the standard of review prescribed by § 77-5019(5), the Court of Appeals did not err in determining that US Ecology presented sufficient evidence before the TERC to establish that the Board acted arbitrarily and capriciously in setting the 1996 valuation and that the correct valuation for that year is $166,000, representing 100 percent of its actual value.

AFFIRMED.

MILLER-LERMAN, J., not participating.