CHRISTIAN RETIREMENT HOMES, INC., APPELLANT, V. BOARD OF EQUALIZATION OF THE COUNTY OF LANCASTER ET AL., APPELLEES.

180 N. W. 2d 136

Filed October 9, 1970. No. 37480.

Mattson, Ricketts & Gourlay, for appellant.

Paul L. Douglas, William D. Blue, Ronald D. Lahners, Floyd A. Sterns, Janice L. Gradwohl, Robert R. Gibson, and Bernard J. McGinn, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

BOSLAUGH, J.

The plaintiff, Christian Retirement Homes, Inc., appeals from a judgment of the district court for Lancaster County, Nebraska, determining that only a part

of Eastmont Manor is exempt from taxation. The property in question is a retirement home owned by the plaintiff and located in Lincoln, Nebraska.

The plaintiff is a nonprofit corporation organized by members of the Lincoln Evangelical Ministerial Fellowship, a fellowship composed of ministers of the Evangelical faith. These ministers, being concerned with the welfare of the older members of the community, developed Eastmont Manor as a project for ministering to needs of senior citizens.

Eastmont Manor is a modern masonry-type structure consisting of 5 floors and a ground floor. As constructed, the building contains 64 apartments, dining room, kitchen, lounge, recreation area, medicenter, and other facilities. The medicenter is located on the top floor of the building and is equipped to furnish extended hospital care. The district court found that the chapel and medicenter were exempt, but that the rest of the property was subject to taxation. There is no cross-appeal. The question presented is whether the property other than the chapel and medicenter is subject to taxation.

Property which is owned and used exclusively for religious or charitable purposes and is not owned or used for financial gain or profit is exempt from taxation. Art. VIII, § 2, Constitution of Nebraska; § 77-202, R. R. S. 1943; Evangelical Lutheran Good Samaritan Soc. v. County of Gage, 181 Neb. 831, 151 N. W. 2d 446. It is the primary or dominant use, and not an incidental use, that is controlling in determining whether property is exempt from taxation.

There is some evidence of religious use of the property. A chaplain-administrator is in charge of the home. Vesper services are conducted on Sundays and Bible classes are held on Thursday mornings in the lounge or dining area. The chaplain counsels with the residents in their apartments. The religious use of the property, other than the chapel, is an incidental rather

than a primary or dominant use. The record will not sustain an exemption of the entire property upon the basis of religious use.

The record shows that the primary or dominant use of the property, other than the chapel and medicenter, is to provide housing for elderly persons. The average age of the residents of the home is about 74 years. At the time of admission they must be physically able to maintain themselves in their own apartment. They are required to sign an occupancy agreement, pay an entrance endowment, and pay a monthly food and service charge. Applicants are required to furnish a financial statement and show that they will be able to pay the monthly fees. The occupancy agreement provides that an occupant's residency shall not be terminated solely by reason of the inability of an occupant to pay the monthly fees, if such a dispensation can be granted without impairing the ability of the home to operate on a sound financial basis.

The entrance endowment is a lump sum payment of from $7,950 to $15,950 and is in the nature of a life-lease payment. Clergymen and missionaries are allowed a 25 percent discount. It is estimated that the entrance endowments will retire the debt against the home in a period of 8 to 10 years and may be discontinued at that time.

The monthly food and service charge is intended to cover the actual operating costs of the home. The residents are required to eat one meal a day in the dining room, but are entitled to eat all of their meals there if they desire. Food service in the apartments is available when necessary, and emergency nursing service is available at all times.

The occupancy agreement provides that the occupant shall have the right to live in the home for the rest of his life and receive unlimited infirmary care in the home. Although the residents of the home residing in the apartments have the benefit of nursing and hospital

services when needed, the record shows that most of these residents require such services only occasionally. In this respect the home is best described as a retirement home rather than a nursing home furnishing daily care similar to hospital care to the occupants.

We are committed to the rule that property which is owned and used primarily for the purpose of furnishing low-rent housing is not entitled to exemption from taxation as property which is owned and used exclusively for charitable purposes. County of Douglas v. OEA Senior Citizens, Inc., 172 Neb. 696, 111 N. W. 2d 719.

The services furnished to the residents of Eastmont Manor are somewhat different in quantity and quality from those described in the OEA Senior Citizens, Inc., case, but the fact remains that the primary use of the property is to provide housing for elderly persons. The plan is to operate the home at cost, with the residents providing the funds necessary to operate the home and retire its debt. Although the operation of the home includes many worthy charitable aspects, the ownership and use of the property, at this time, is not exclusively charitable.

The judgment of the district court is affirmed.

AFFIRMED.