DAN PITTMAN, SARPY COUNTY ASSESSOR, APPELLEE, V.
SARPY COUNTY BOARD OF EQUALIZATION, APPELLEE,
AND MERCY CRESTVIEW VILLAGE, APPELLANT.
603 N.W.2d 447

Filed December 17, 1999. No. S-99-063.

Jerry M. Slusky and Shaun M. James, of Gross & Welch, P.C., for appellant.

Michael E. Thew, Deputy Lancaster County Attorney, for appellee Dan Pittman.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## I. INTRODUCTION

The Sarpy County Board of Equalization (county board) granted a property tax exemption to Mercy Crestview Village (Mercy) in 1998, against the recommendation of the Sarpy County assessor (assessor). The assessor then appealed the county board's decision to the Tax Equalization and Review Commission (TERC). TERC reversed the county board's decision to grant Mercy's property tax exemption and ordered the property placed on the county's tax rolls. Mercy now appeals. We removed this case to our docket pursuant to our power to

regulate the Nebraska Court of Appeals' caseload and that of this court. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## II. BACKGROUND

In 1996, Mercy purchased an apartment complex in Sarpy County, Nebraska. Mercy, a nonprofit corporation, is ultimately sponsored by the Sisters of Mercy, a Catholic religious order. Mercy's mission is to "create and strengthen healthy communities through the provision of quality, affordable, service-enriched housing for individuals and families who are economically poor."

The apartment complex consists of 154 residential units. One unit is used as an office and another is used as a "network center." The network center is used to provide programs such as neighborhood watch, tutoring, computer classes, home ownership seminars, cancer awareness, and CPR classes. The network center is also used for social events and as a meeting place. Tenants are not required to participate in any of the services Mercy provides through the network center.

Mercy employs a service coordinator who meets with individual tenants to assess what programs or services would meet the needs of the tenants. The coordinator encourages tenants to participate in programs offered through the network center. The programs and services offered are constantly changing based on the specific needs of the tenants. Classes offered through the network center are generally taught by volunteers, and class materials are informational in nature. In October 1998, the network center was used 12 percent of the time (61 hours) for providing educational programs.

Persons applying to live at Mercy are subject to a credit check. Tenants must sign a lease and pay rent. Mercy has two low-income housing contracts with the Department of Housing and Urban Development (HUD), commonly referred to as "Section 8" and "Section 236" contracts. In order to qualify for HUD housing, a tenant's income must be at or below a certain level. Mercy sets a rental rate in compliance with HUD's requirements. Tenants of Section 8 units may receive a HUD subsidy. Tenants are subject to eviction for nonpayment of rent. There is no time limit on how long a tenant may reside at Mercy.

Mercy is self-supporting based on rent and rent subsidies. The property is expected to stand on its own financially. Any operating loss is covered by the "reserve for replacement" account, which is funded by Mercy's operating income. Mercy has never had to go beyond this reserve account to cover losses. However, if the reserve account would run short of covering a loss, Mercy would apply to HUD for a rent increase.

Mercy applied for a property tax exemption for the apartment complex in 1996 and 1997 based on Neb. Rev. Stat. § 77-202 (Cum. Supp. 1998), which provides that property owned by educational, religious, charitable, or cemetery organizations used exclusively for educational, religious, charitable, or cemetery purposes is exempt from property taxes. The county board granted the exemptions for both years over the assessor's recommended denial.

In 1998, Mercy filed an affidavit of use for continued tax exemption in order to have its property tax exemption continued for 1998. The assessor recommended denial of the continued tax exemption for the reason that low income housing is not an exempt use of the property under § 77-202. However, the county board granted the continuing exemption for 1998.

On June 10, 1998, the assessor appealed the county board's decision to approve Mercy's 1998 property tax exemption to TERC. On July 15, Mercy filed a motion to dismiss the assessor's appeal, claiming the assessor did not have standing to bring such an appeal based on *Bemis v. Board of Equalization of Douglas County*, 197 Neb. 175, 247 N.W.2d 447 (1976). In October 1998, the assessor requested, pursuant to Neb. Rev. Stat. § 77-5007.01 (Cum. Supp. 1998), to have counsel appointed to represent him. That request was granted. TERC overruled Mercy's motion to dismiss, finding that *Bemis* was no longer controlling due to the 1995 enactment of the Tax Equalization and Review Commission Act (TERCA), Neb. Rev. Stat. §§ 77-5001 through 77-5031 (Reissue 1996 & Cum. Supp. 1998). TERC found that under §§ 77-5007 and 77-5007.01 of TERCA, the assessor had standing to appeal the county board's granting of the property tax exemption.

In December 1998, TERC held a hearing on the assessor's appeal. At the hearing, TERC received testimony and exhibits

regarding Mercy's use of the property. TERC found that the predominant use of the property was to provide low-income housing and that thus, it was not exempt from taxation. TERC reversed the county board's decision and ordered the property returned to the tax rolls of Sarpy County. Mercy appeals.

### III. ASSIGNMENTS OF ERROR

Mercy claims, restated and summarized, that TERC erred in (1) finding the assessor had standing to bring the appeal, (2) incorrectly placing the burden of proof on Mercy to show entitlement to the tax exemption, (3) finding the assessor presented clear and convincing evidence to support denial of the tax exemption, and (4) finding that the county board's decision to grant the exemption was arbitrary and unreasonable.

### IV. STANDARD OF REVIEW

Decisions rendered by TERC shall be reviewed by an appellate court for errors appearing on the record. § 77-5019(5). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *US Ecology v. Boyd Cty. Bd. of Equal.*, 256 Neb. 7, 588 N.W.2d 575 (1999).

### V. ANALYSIS

#### 1. STANDING OF COUNTY ASSESSOR

Mercy claims the assessor lacks standing to appeal the county board's granting of Mercy's tax exemption based on *Bemis v. Board of Equalization of Douglas County*, 197 Neb. 175, 247 N.W.2d 447 (1976), in which we held that a county assessor had no standing to bring an appeal of a tax exemption determination. At the time *Bemis* was decided, Neb. Rev. Stat. § 77-202.04 (Reissue 1976) provided:

> Persons, corporations, or organizations denied exemption from taxation for real or tangible personal property . . . by a county board of equalization may appeal de novo to the district court . . . in the same manner and under the same procedure as provided by sections 77-1510 and 77-1511, in the case of appeals from other actions of a county board of equalization . . . .

Also at the time of the *Bemis* decision, Neb. Rev. Stat. § 77-202.06 (Reissue 1976) provided:

> The Tax Commissioner may review and reverse any decision of the county board of equalization granting tax exempt status for real or tangible personal property, including motor vehicles, but only after a hearing has been held by the Tax Commissioner in the county where the property exempted is situated, upon ten days' written notice to the applicant and to the county board of equalization. The Tax Commissioner shall within thirty days of the hearing certify his order to the applicant, the county assessor, and the county board of equalization.

In *Bemis*, we concluded that "the county assessor's responsibility is limited to an advisory rather than an adversary capacity" and that the assessor did not have standing to appeal a tax exemption determination. 197 Neb. at 177, 247 N.W.2d at 448. We stated that the assessor's remedy was not to prosecute an appeal but to bring the decision to the attention of the Tax Commissioner who could then review the decision as provided in § 77-202.06. *Bemis, supra.*

The statutory scheme regarding tax exemptions has changed since the *Bemis* decision. The Legislature adopted TERCA in 1995, which created TERC. See § 77-5003. Under TERCA, TERC was granted the power to hear appeals involving certain property tax matters, including decisions of a county board of equalization granting or denying tax-exempt status for real or personal property. § 77-5007(2).

After the adoption of TERCA, § 77-202.04 (Cum. Supp. 1998) was amended to provide: "Persons, corporations, or organizations denied exemption from taxation for real or tangible personal property by a county board of equalization may appeal to the Tax Equalization and Review Commission. The Property Tax Administrator may in his or her discretion intervene in any such appeal."

Section 77-202.06 (Cum. Supp. 1998) now provides:

> The Property Tax Administrator shall adopt and promulgate rules and regulations governing tax-exempt status for real or tangible personal property. The Tax Equalization and Review Commission may review and reverse any deci-

sion of the county board of equalization granting tax-exempt status for real or tangible personal property but only after a hearing has been held by the commission, upon ten days' written notice to the applicant and to the county board of equalization. The commission shall within thirty days after the hearing mail an order to the applicant, the county assessor, and the county board of equalization.

Furthermore, § 77-5007.01 provides: "In appeals by a county assessor in his or her official capacity pursuant to section 77-5007, the county assessor may request that the district court appoint an attorney to represent the county assessor before the commission."

Mercy claims that § 77-202.04 limits the parties who may appeal a tax exemption determination to "persons, corporations, or organizations denied exemption from taxation." Mercy interprets this section to mean that only parties denied a tax exemption may appeal a tax exemption determination. Mercy claims that because § 77-202.04 was not repealed when TERCA was enacted, *Bemis v. Board of Equalization of Douglas County*, 197 Neb. 175, 247 N.W.2d 447 (1976), is still controlling, and the assessor does not have standing to appeal to TERC.

 Statutes relating to the same subject matter are to be construed together so as to maintain a consistent and sensible scheme. *Central States Found. v. Balka*, 256 Neb. 369, 590 N.W.2d 832 (1999); *FirsTier Bank v. Department of Revenue*, 254 Neb. 918, 580 N.W.2d 537 (1998). Construction of a statute will not be adopted which has the effect of nullifying or repealing another statute. *In re Invol. Dissolution of Battle Creek State Bank*, 254 Neb. 120, 575 N.W.2d 356 (1998).

In the present case, § 77-5007(2) gives TERC the power to hear appeals of decisions *granting or denying* property tax exemptions. Under Mercy's interpretation that only parties enumerated in § 77-202.04 may appeal a tax exemption determination, a grant of a property tax exemption could never be appealed to TERC because § 77-202.04 includes only parties who have been *denied* a tax exemption. This interpretation would nullify § 77-5007(2), which provides that TERC has the power to hear appeals of both denials and grants of exemptions.

Section 77-5007.01 provides that an assessor may request appointment of counsel to represent the assessor in an appeal under the situations listed in § 77-5007, which includes appeals of decisions granting tax exemptions. The fact that § 77-202.04 limits the parties who may appeal the *denial* of a tax exemption does not limit an assessor's power to bring an appeal of a decision *granting* an exemption. Contrary to Mercy's assertions, these provisions can be read together to maintain a sensible scheme in which appeals of decisions denying tax-exempt status can be brought only by certain parties, but appeals of decisions granting tax-exempt status are not so limited.

In *Bemis*, we stated that if the assessor feels aggrieved by a tax exemption determination, the assessor's remedy was to bring the decision to the attention of the Tax Commissioner, who may then review the decision as provided in § 77-202.06 (Reissue 1976). After enactment of TERCA, TERC replaced the Tax Commissioner in § 77-202.06. Thus, under the new statutory scheme, when the assessor is aggrieved by an exemption determination, the assessor's remedy is to bring the matter to TERC's attention. The method by which the assessor brings the matter to TERC's attention is by filing an appeal with TERC. Section 77-5007(2) gives TERC jurisdiction to hear such an appeal. Under the current statutory scheme, the assessor has standing to appeal the granting of Mercy's property tax exemption.

## 2. REVERSAL OF COUNTY BOARD'S DECISION GRANTING PROPERTY TAX EXEMPTION

### (a) Burden of Proof

Mercy's remaining assignments of error relate to the propriety of TERC's reversal of the county board's granting of Mercy's 1998 property tax exemption. Mercy first claims that TERC improperly placed on Mercy the burden of proving its entitlement to the tax exemption. Mercy claims that it was entitled to a presumption that the county board's decision was correct and that the assessor had the burden of rebutting that presumption.

Neb. Rev. Stat. § 77-1510 (Cum. Supp. 1998) provides that appeals may be taken "from any action of the county board of

equalization" to TERC in accordance with TERCA. Further, Neb. Rev. Stat. § 77-1511 (Reissue 1996) provides that TERC shall hear appeals taken under § 77-1510 and "shall affirm the action taken by the board unless evidence is adduced establishing that the action of the board was unreasonable or arbitrary . . . ."

■ We have held that § 77-1511 creates a presumption that the county board of equalization has faithfully performed its official duties and has acted upon sufficient competent evidence to justify its actions. *US Ecology v. Boyd Cty. Bd. of Equal.*, 256 Neb. 7, 588 N.W.2d 575 (1999). That presumption remains until rebutted by clear and convincing evidence. *Id.*

■ The assessor claims that this presumption should not be applied in appeals involving exemptions, citing *Indian Hills Comm. Ch. v. County Bd. of Equal.*, 226 Neb. 510, 517, 412 N.W.2d 459, 464 (1987), in which we stated, "An exemption from taxation is never presumed." However, the issue in *Indian Hills Comm. Ch.* was whether a religious organization who failed to file an application for exemption was entitled to an automatic tax exemption. The presumption that arises under § 77-1511 is a presumption that the county board acted properly in making a decision on the issue before it, not a presumption that property is entitled to exemption. The presumption that arises under § 77-1511 is consistent with the holding in *Indian Hills Comm. Ch.* that a tax exemption is never presumed.

The assessor further claims that the presumption which arises under § 77-1511 has never been applied in an exemption case and should not be applied in this case. However, the fact that the presumption has been previously discussed only in valuation cases does not necessarily mean that the presumption is inapplicable in exemption cases.

Section 77-1511 provides that TERC shall "determine anew all questions raised before the county board of equalization which relate to the liability of the property to assessment, or the amount thereof." The term "assessment" is defined in Neb. Rev. Stat. § 77-126 (Cum. Supp. 1998) as "the act of listing the description of all real property and taxable tangible personal property, determining its taxability, determining its taxable or assessed value, and placing it on the assessment roll." Section 77-1511 deals with valuation of property and with whether

property is subject to taxation at all. Furthermore, because § 77-1511 provides the standard of review for appeals from any action of a county board taken under § 77-1510, this standard applies to both valuation and exemption decisions by a county board. Accordingly, the presumption we have recognized in valuation cases is applicable in exemption cases.

Mercy claims TERC improperly placed the burden on Mercy to prove its entitlement to the tax exemption instead of first placing the burden on the assessor to present clear and convincing evidence to rebut the presumption that the county board acted properly in granting the exemption. However, TERC stated in its order that "the Assessor has established by a clear and convincing evidence that the decision of the County was unreasonable and arbitrary."

■ Once the assessor rebutted the presumption, the burden shifted back to Mercy to prove its entitlement to the exemption. The burden of showing entitlement to a tax exemption is on the applicant. *Indian Hills Comm. Ch., supra.* TERC found that Mercy had not met this burden. TERC correctly applied the burden of proof.

### (b) Sufficiency of Evidence

■ Mercy claims TERC erred in finding the assessor presented clear and convincing evidence to support denial of the tax exemption. Property "owned by educational, religious, charitable, or cemetery organizations and used exclusively for educational, religious, charitable, or cemetery purposes" is exempt from property taxes. § 77-202(1)(c). An educational organization is one that offers regular courses with systematic instruction in academic, vocational, or technical subjects. § 77-202(1)(c). In the present case, the property is not owned by an educational organization or used primarily for educational purposes. Although the record indicates that educational programs do take place in Mercy's network center, these programs are not regular courses with systematic instruction in academic, vocational, or technical subjects. The programs Mercy offers are informational in nature and change based on the needs of the tenants.

A religious organization is one which professes a sectarian creed and belief in a divine and superhuman power. 316 Neb.

Admin. Code, ch. 42, § 006.01B (1993). Although Mercy is ultimately sponsored by a Catholic religious order, it is not owned by a religious organization and the property is not predominantly used for religious purposes. There is nothing in the record indicating that the property is used to promote a sectarian creed or belief in a divine and superhuman power. A cemetery organization is an organization which maintains areas formally set apart for the interment of the human dead. *Id.*, § 006.01D. Mercy is obviously not a cemetery organization.

The only possible exempt category Mercy could qualify for would be a charitable organization using the property exclusively for charitable purposes. A charitable organization is "an organization operated exclusively for the purpose of the mental, social, or physical benefit of the public or an indefinite number of persons." § 77-202(1)(c).

TERC found that because the predominant use of Mercy's property is to provide low-income housing, it was not entitled to a tax exemption under § 77-202(1)(c) as property used exclusively for charitable purposes. It is well established that low-income housing is not a charitable use of property. *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal.*, 243 Neb. 351, 500 N.W.2d 520 (1993); *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal.*, 230 Neb. 135, 430 N.W.2d 502 (1988); *OEA Senior Citizens, Inc. v. County of Douglas*, 186 Neb. 593, 185 N.W.2d 464 (1971); *Christian Retirement Homes, Inc. v. Board of Equalization*, 186 Neb. 11, 180 N.W.2d 136 (1970); *County of Douglas v. OEA Senior Citizens, Inc.*, 172 Neb. 696, 111 N.W.2d 719 (1961).

Mercy asserts that providing housing is incidental to the services it provides and that it is entitled to an exemption under *Young Women's Christian Assn. v. City of Lincoln*, 177 Neb. 136, 128 N.W.2d 600 (1964) (*YWCA*). In *YWCA*, we held that property used to provide temporary low-cost housing for young women was a charitable, religious, or educational use of the property. We reaffirmed in *YWCA* that property predominantly used for low-income housing was not an exempt use of property. However, we noted that the property in *YWCA* was purchased through a bequest and a fundraising drive and was not self-

supporting. The residents were required to become members of the YWCA, which included commitment to the Christian faith. The residents were also required to abide by certain supervision rules in order to live on the property. The residents could live there no longer than 3 years while they pursued vocational or educational training.

Operation of Mercy's property is significantly different than that involved in *YWCA*. Mercy is self-supporting based on rental income. Mercy's housing is not temporary. Tenants are not required to participate in services Mercy offers through the network center. A tenant may simply live in the housing and take no part in the services Mercy offers. In a typical month, the network center was used 12 percent of the time for providing educational programs. Only one unit at Mercy is used to provide services, while 152 units are used to provide housing. Although the supportive services may be important to Mercy's overall goals, they do not constitute the predominant use of the property.

The evidence presented supports TERC's determination that the exclusive use of the property is to provide low-income housing. The term "exclusively" in § 77-202(1)(c) means that the primary or dominant use of the property, and not an incidental use, is controlling in determining whether a property is exempt from taxation. *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal.*, 243 Neb. 351, 500 N.W.2d 520 (1993). The evidence presented in this case supports TERC's finding that the charitable and educational uses of the property, while providing a valuable community service, are incidental uses. TERC's decision to deny Mercy tax-exempt status is supported by the evidence, and Mercy's assignment of error in this respect is without merit.

### (c) Unreasonable and Arbitrary Finding

Finally, Mercy claims TERC erred in finding that the county board's decision was unreasonable and arbitrary. "A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion." *Central Platte NRD v. City of Fremont*, 250 Neb. 252, 255, 549 N.W.2d 112, 115 (1996). "The term 'unreasonable' can be applied to an adminis-

trative decision only if the evidence presented leaves no room for differences of opinion among reasonable minds." *Id.* at 256, 549 N.W.2d at 115.

The county board's decision granting Mercy's property tax exemption was unreasonable and arbitrary. The evidence clearly established that the predominant use of the property is to provide low-income housing, which is not an exempt use. The county board disregarded this fact when granting the property tax exemption.

Based on the evidence presented, there is no room for a difference of opinion among reasonable minds on this issue. Mercy's mission may have charitable and educational aspects, but it is clear that the *predominant* use of the property is to provide low-income housing. Thus, TERC did not err in determining that the county board's decision was arbitrary and unreasonable.

## VI. CONCLUSION

TERC's decision to reverse the county board's granting of Mercy's tax exemption conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. TERC correctly found that after the enactment of TERCA, the assessor had standing to appeal the county board's granting of Mercy's tax exemption. Because the predominant use of the property does not qualify for an exemption, TERC was correct in finding that the county board's decision granting the exemption was arbitrary and unreasonable.

AFFIRMED.