BETHESDA FOUNDATION, APPELLANT, V. BUFFALO COUNTY
BOARD OF EQUALIZATION, APPELLEE.

640 N.W.2d 398

Filed March 15, 2002.   No. S-01-495.

Robert L. Lepp, R. Thomas Workman, and Ronald R. Volkmer, of McGill, Gotsdiner, Workman & Lepp, P.C., L.L.O., for appellant.

Andrew J. McMullen, Buffalo County Attorney, and Andrew W. Hoffmeister for appellee.

Abbie J. Widger and Stefanie S. Flodman, of Johnson, Flodman, Guenzel & Widger, amici curiae for Nebraska Health Care Association and Nebraska Association of Hospitals and Health Systems.

Mark D. McGuire, of McGuire and Norby, amicus curiae for Nebraska Association of Homes and Services for the Aging.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The Bethesda Foundation (Bethesda) requested a property tax exemption for the 2000 tax year. Bethesda sought the exemption under Neb. Rev. Stat. § 77-202(1)(c) (Cum. Supp. 1998) for an assisted living facility which Bethesda asserted was property owned by a charitable organization and used for a charitable purpose. The Buffalo County Board of Equalization (Board) denied the application, and Bethesda appealed to the Nebraska Tax Equalization and Review Commission (TERC), which affirmed the Board's denial. Bethesda then appealed to the Nebraska Court of Appeals. The appeal was moved to this court's docket pursuant to our authority to regulate the caseloads of this court and the Court of Appeals.

## SCOPE OF REVIEW

Appellate review of a decision by TERC shall be conducted for error on the record of TERC. Neb. Rev. Stat. § 77-5019(5) (Supp. 2001).

When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *County of Douglas v. Nebraska Tax Equal. & Rev. Comm.*, 262 Neb. 578, 635 N.W.2d 413 (2001). However, in instances where an appellate court is required to review cases for error appearing on the record, questions of law are reviewed de novo on the record. *Id.*

## FACTS

At the time Bethesda filed its application, § 77-202(1)(c) provided for an exemption from property taxes if a property was

> owned by educational, religious, charitable, or cemetery organizations and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not (i) owned or used for financial gain or profit to either the owner or user, (ii) used for the sale of alcoholic liquors for more than twenty hours per week, or (iii) owned or used by an organization which discriminates in membership or employment based on race, color, or national origin. . . . For purposes of this subdivision, charitable organization shall mean an organization operated exclusively for the purpose of the mental, social, or physical benefit of the public or an indefinite number of persons[.]

The property for which Bethesda sought an exemption for the 2000 tax year is an assisted living facility known as Cambridge Court, located at 4107 Central Avenue in Kearney, Nebraska. The state-licensed facility includes 41 residential units, a common dining room, a multipurpose room, an activities area, business offices, a nurses' station, and lounge areas. The staff includes licensed practical nurses who are on duty full time on the day and evening shifts, nurses' aides who are on duty 24 hours daily, a full-time night "med-aide," and a licensed practical nurse who provides management services. Each room is equipped with an emergency call system. Residents receive assistance with bathing, dressing, and ambulation, and medications are monitored. Three meals are provided each day, as well as an evening snack. Bethesda also provides personal laundry service, weekly housekeeping, activities, transportation, and utilities, except for telephone service.

Bethesda was formed in 1967 to own and operate nonprofit nursing homes. It later sold its nursing home assets and converted to the ownership and operation of assisted living facilities. Of the nine assisted living facilities owned by Bethesda in Arizona, Colorado, Missouri, and Nebraska, five have received property tax exemptions. Bethesda qualifies as a § 501(c)(3) organization as described in the Internal Revenue Code.

In its application for an exemption, Bethesda asserted that Cambridge Court is operated exclusively for the mental, social, or physical benefit of the public because it provides care for elderly persons who are less than totally self-sufficient. Seven of the 41 units at Cambridge Court are set aside for residents who require rent subsidies through the state Medicaid waiver program. These residents pay $400 to $500 per month less than do those who have their own financial resources. Monthly rates are $2,190 for upstairs rooms and $2,135 for downstairs rooms. Cambridge Court's administrator testified at the hearing before the Board that the State pays $1,675 per month for the seven Medicaid residents. Bethesda claimed that Cambridge Court should be considered to be in the same category as a nursing home because most of its residents would be in a nursing home if they were not living at Cambridge Court.

After a hearing on May 9, 2000, the Board voted to deny the exemption request. Bethesda appealed the denial to TERC, which found that the Board's decision to deny the application for an exemption was not unreasonable or arbitrary. TERC concluded that Bethesda did not meet the statutory definition of a charitable organization and that the facility was not exclusively or predominantly used for charitable purposes. TERC affirmed the denial of the exemption, and Bethesda appealed.

## ASSIGNMENTS OF ERROR

Bethesda assigns five errors, which can be summarized to assert that (1) TERC's decision to affirm the denial of the tax exemption is contrary to the law, is not supported by competent evidence, and is arbitrary, capricious, and unreasonable; (2) TERC erroneously applied the presumption that the Board faithfully performed its duties and acted upon sufficient competent evidence; and (3) TERC erred in affirming the Board's decision, which affirmance violated the uniformity clause of the state Constitution and denied Bethesda equal protection of the law under the state Constitution because similarly situated property owners have been treated differently and there is no rational justification for this disparate treatment.

## ANALYSIS

We need address only Bethesda's first assignment of error. The question presented is whether the primary or dominant use of Cambridge Court is for charitable purposes. Whether Bethesda is a charitable organization as required in § 77-202(1)(c) is not before us. The status of Bethesda as a charitable organization was not a contested issue before the Board and was not an issue contested by the parties. The parties agreed that Bethesda is a charitable organization and that the property is owned by a charitable organization. Since the issue was not presented to the Board, it could not be presented to TERC, and TERC had no power to reach the issue sua sponte. The appeal is restricted to questions raised before the Board. TERC has no authority to consider questions not raised before a county board of equalization. *Arcadian Fertilizer v. Sarpy Cty. Bd. of Equal.*, 7 Neb. App. 499, 583 N.W.2d 353 (1998).

■ In order for property to be exempt from taxation, a claimant must prove

(1) that the subject property is owned by a charitable, educational, religious, or cemetery organization; (2) that the subject property is not being used for financial gain or profit to the owner or user; and (3) that the subject property is being used exclusively for charitable, educational, religious, or cemetery purposes . . . .

(Citation omitted.) *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal.*, 230 Neb. 135, 139-40, 430 N.W.2d 502, 505 (1988).

State law and regulations adopted by the Nebraska Department of Property Assessment and Taxation specify an additional two tests which must be satisfied in order to qualify for an exemption: the property cannot be used for the sale of alcoholic liquors for more than 20 hours per week and the property cannot be owned or used by an organization which discriminates in membership or employment based on race, color, or national origin. See, § 77-202(1)(c); 350 Neb. Admin. Code, ch. 40, § 005.01 (1999). Those two tests are not before us. No questions have been raised concerning whether Bethesda sells alcohol on the property, whether it practices any kind of discrimination, or whether it is used for financial gain or profit of the owner. In its brief, the Board notes that its sole

dispute concerns whether the property is used exclusively for a charitable purpose.

A Department of Property Assessment and Taxation regulation provides that an exemption is available only if the property is

> used exclusively for religious, educational, charitable, or cemetery purposes. The property need not be used solely for one of the four categories of exempt use, but may be used for a combination of the exempt uses. For purposes of this exemption, the term exclusive use shall mean the predominant or primary use of the property as opposed to incidental use. The exemption will not be lost if the property is used in an incidental manner that is not one or more of the exempt uses.

See 350 Neb. Admin. Code, ch. 40, § 005.03 (1999). The use of the property establishes whether it is exempt. See § 005.03B(3). As used in § 77-202(1)(c), the term "exclusively" meant that "the primary or dominant use of the property, and not an incidental use, [was] controlling in determining whether a property [was] exempt from taxation." *Pittman v. Sarpy Cty. Bd. of Equal.*, 258 Neb. 390, 401, 603 N.W.2d 447, 455 (1999). A tax exemption for charitable use is allowed because those exemptions "benefit the public generally and the organization performs services which the state is relieved pro tanto from performing." *United Way v. Douglas Co. Bd. of Equal.*, 215 Neb. 1, 3, 337 N.W.2d 103, 105 (1983). "[E]xclusive use means the primary or dominant use of property, as opposed to incidental use." *Neb. Unit. Meth. Ch. v. Scotts Bluff Cty. Bd. of Equal.*, 243 Neb. 412, 416, 499 N.W.2d 543, 547 (1993).

TERC found that Cambridge Court was not used exclusively for charitable purposes, in part, because Medicaid waiver program residents make up only 17 percent of the residents. It concluded that the record did not support a finding that housing Medicaid waiver program residents relieved the state or federal government of any burden because Cambridge Court was reimbursed, at a maximum, $1,750 per month to house each Medicaid resident. The facility had previously been certified for the Medicaid waiver program when it was owned by a for-profit corporation. TERC found that Bethesda's fees are not moderate and

that the facility is in direct competition with a for-profit assisted living facility.

TERC found that assisted living facilities have minimal medical education or training requirements for employees and concluded that while Cambridge Court met the definitions of an assisted living facility and a health care facility under state law, "it [did] not provide 'medical care' (as that term is defined under state law)." An assisted living facility provides " 'accommodation, board, and an array of services for assistance with or provision of personal care, activities of daily living, health maintenance activities, or other supportive services.' " See Neb. Rev. Stat. § 71-2017.01(13) (Supp. 1999), currently at Neb. Rev. Stat. § 71-406(1) (Cum. Supp. 2000). TERC concluded that the services provided by the facility did not have any "exclusively" or "predominantly" charitable character and that Cambridge Court was not used exclusively or predominantly for a charitable purpose.

This court reviews a decision by TERC for error on the record of TERC. See § 77-5019(5). Our inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See *County of Douglas v. Nebraska Tax Equal. & Rev. Comm.*, 262 Neb. 578, 635 N.W.2d 413 (2001). Where an appellate court is required to review cases for error appearing on the record, questions of law are reviewed de novo on the record. *Id.*

Bethesda argues that assisted living facilities currently provide services equivalent to those provided by nursing homes in the past and that nursing homes have been granted property tax exemptions. In *Evangelical Lutheran Good Samaritan Soc. v. County of Gage*, 181 Neb. 831, 151 N.W.2d 446 (1967), we held that even though a nursing home operated by a nonprofit company charged those who were able to pay for its services, the facility was used for a charitable purpose. See, also, *Bethesda Foundation v. County of Saunders*, 200 Neb. 574, 264 N.W.2d 664 (1978).

■ The primary or dominant use of the property is controlling in determining whether property is exempt from taxation. *Pittman v. Sarpy Cty. Bd. of Equal.*, 258 Neb. 390, 603 N.W.2d 447 (1999). In order to determine the primary use of the property

in question, we look to the evidence presented before TERC. At the time Bethesda filed its exemption request, Neb. Rev. Stat. § 77-1511 (Reissue 1996), currently at Neb. Rev. Stat. § 77-5016 (Supp. 2001), provided that TERC shall "determine anew all questions raised before the county board of equalization which relate to the liability of the property to assessment, or the amount thereof."

The residents of Cambridge Court are admitted without regard to race, color, or national origin and without regard to the ability of the residents to pay. The criteria for admission is the need for care. No resident has ever been discharged for failure to pay, nor has Bethesda ever filed a suit to collect delinquent accounts. Accounting, payroll, and other administrative tasks are performed at Bethesda's main office. In the event a facility needs improvements or is unable to pay for them, Bethesda uses excess receipts from other facilities to pay the deficit or cover expenses.

Cambridge Court provides management of the premises by a full-time licensed nurse and nurses' aides on duty 24 hours daily. The rooms are equipped with an emergency call system monitored by nurses or aides. Monitoring of medication is provided, as is assistance with bathing, dressing, and ambulation. Three meals are provided per day, including snacks and special diets. The facility also provides personal laundry service, weekly housekeeping, weekly activities, programs, and scheduled transportation for the residents. All utilities are paid except for telephone service.

Cambridge Court is a health care facility and has secured the required state license to function as an assisted living facility. In order to be eligible for admission to an assisted living facility, an applicant must need or request the facility's services due to age, infirmity, or physical disability. See Neb. Rev. Stat. § 71-20,116(3) (Cum. Supp. 1998), recodified at Neb. Rev. Stat. § 71-461(3) (Cum. Supp. 2000).

The facility is also certified as a Medicaid waiver assisted living provider. Eligibility for this program requires that residents qualify for Medicaid and have a need for care equal to residents in a nursing facility. Cambridge Court also accepts welfare

residents who require a level of care equal to the level provided in a nursing home. It accepts individuals in need of noncomplex medical care and does not prescreen the applicants for financial ability prior to admission. All residents are permitted to remain in the facility regardless of their ability to pay for services provided.

Bethesda charges one inclusive monthly rate for room, board, and medical services provided. The residents vary in age from 58 to 96, with the average age almost 85 years. All have a medical condition requiring some assistance. A nursing station provides a program of basic nursing care. Residents are assisted with bathing, general hygiene, dressing, eating, and ambulation. There are approximately 28 paid employees, half of whom are involved in medical care of the residents.

Cambridge Court also provides Bible study, religious worship, weekly games, exercise classes, field trips, and transportation to local stores, restaurants, and other destinations. A certified activities director is employed.

■ We hold that TERC erred in finding that the assisted living facility was not used for charitable purposes. TERC's decision does not conform to the law, was not supported by competent evidence, and was arbitrary. A decision is arbitrary when it is made in disregard of facts or circumstances and without some basis which would lead a reasonable person to the same conclusion. *Pittman v. Sarpy Cty. Bd. of Equal.*, 258 Neb. 390, 603 N.W.2d 447 (1999). The evidence clearly established that the predominant use of the property was for a charitable purpose.

## CONCLUSION

We conclude that Cambridge Court is owned and used exclusively for charitable purposes within the meaning of § 77-202 in that the primary or dominant use of the property is for charitable purposes. Therefore, TERC's order is reversed, and the cause is remanded to TERC with directions to instruct the Board to grant the exemption.

REVERSED AND REMANDED WITH DIRECTIONS.