Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/04/2018 08:10 AM CDT

- 970 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
PLATTE RIVER CRANE TRUST v. HALL CTY. BD. OF EQUAL.
Cite as 298 Neb. 970

PLATTE RIVER WHOOPING CRANE MAINTENANCE
TRUST, INC., APPELLANT, V. HALL COUNTY
BOARD OF EQUALIZATION, APPELLEE.

___ N.W.2d ___

Filed February 9, 2018.    No. S-17-389.

1. **Taxation: Judgments: Appeal and Error.** Appellate courts review decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Taxation: Statutes: Appeal and Error.** The meaning of a statute is a question of law, and a reviewing court is obligated to reach its conclusions independent of the determination made by the Tax Equalization and Review Commission.
4. **Taxation: Charities.** A tax exemption for charitable use is allowed because those exemptions benefit the public generally and the organization performs services which the state is relieved pro tanto from performing.

Appeal from the Tax Equalization and Review Commission. Reversed and remanded with directions.

Jordan W. Adam, of Fraser Stryker P.C., L.L.O., for appellant.

Timothy L. Moll, of Rembolt Ludtke, L.L.P., for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

- 971 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
298 NEBRASKA REPORTS
PLATTE RIVER CRANE TRUST v. HALL CTY. BD. OF EQUAL.
Cite as 298 Neb. 970

KELCH, J.

## NATURE OF CASE

The issue presented is whether the Platte River Whooping Crane Maintenance Trust, Inc. (Crane Trust), is a charitable organization within the meaning of Neb. Rev. Stat. § 77-202(1)(d) (Cum. Supp. 2014).

## BACKGROUND

### APPLICATION FOR EXEMPTION

The Crane Trust is a nonprofit corporation dedicated to conserving and protecting the natural habitat for whooping Cranes, sandhill Cranes, and other migratory birds along the Platte River in central Nebraska. For the last decade, the Hall County Board of Equalization (Board) granted a charitable tax exemption under § 77-202(1)(d) to various properties owned by the Crane Trust. In December 2014, the Crane Trust sought a property tax exemption for six additional parcels of land (Subject Properties). The Subject Properties consist of 829.68 acres of land and carry a property tax liability of approximately $22,000 for 2015, the tax year in question. At that time, the Board denied the Crane Trust's application for a property tax exemption for the Subject Properties. There is no explanation in the record as to why the Board granted tax exemption to some of the Crane Trust's properties, but not to the Subject Properties.

The Crane Trust appealed to the Nebraska Tax Equalization and Review Commission (TERC). A hearing was held, during which the Crane Trust presented evidence about its educational efforts, contributions to the scientific community, and other benefits to the public. The evidence was largely undisputed.

### EVIDENCE PRESENTED AT HEARING

The Crane Trust presented evidence showing that its conservation efforts benefit the thousands of people who visit its property each year to observe the crane migration, learn about the prairie, and interact with nature. The Crane Trust

- 972 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
PLATTE RIVER CRANE TRUST v. HALL CTY. BD. OF EQUAL.
Cite as 298 Neb. 970

provides free public tours during crane season, and its property is open year round at no charge to the public. The Crane Trust also has a large network of public trails, which are used by the public for exercise and for an annual cross-country race for a local high school.

Students, researchers, and scientists from all across the country visit the Crane Trust to perform scientific research on the Subject Properties every week. The Crane Trust also performs research on the land and has published more than 30 articles in the past decade, which are available to the public for free. Some of the articles come from research that the Crane Trust performed on the Subject Properties in 2015.

The Crane Trust also provides educational activities to teach the public about habitat and conservation. It posts informational signs along its trails and hosts a program for public schools in which students visit its property every month to study the plants, wildlife, insects, and habitat with the help of a Crane Trust biologist.

The evidence also showed that a portion of the Subject Properties was leased to a farming operation for cattle grazing, for which the Crane Trust received $9,300. The Crane Trust's chief executive officer testified that the lease money was not distributed to its members, directors, officers, or anyone else and that the cost of managing the Subject Properties far exceeded the amount of lease money. The chief executive officer testified that the cattle grazing was part of the Crane Trust's habitat management program—that the grazing and hoof compaction on the soil provides a natural disturbance on the grassland that helps promote and sustain different species on the parcels, cycle nutrients on the prairie, open up the grassland for the crane to use, and keep invasive species of plants at bay.

### TERC Affirms Board's Denial of Exemption

Following the hearing, TERC affirmed the Board's decision to deny tax exemption to the Subject Properties. It stated

that the issue was whether the term "charitable organization" in the relevant statute was broad enough to include an organization devoted to protecting natural habitat. It concluded that although the Crane Trust provides educational, scientific, and recreational benefits to the public, Nebraska courts have limited charitable exemptions to "traditional charitable enterprises providing relief [to] the poor and distressed." Therefore, it concluded that the policy question of whether to expand the definition to include conservation efforts must be left to the Legislature.

TERC found that the Crane Trust provided some level of mental, social, and physical benefits to the public, but ultimately determined that it was not a charitable organization because § 77-202(1)(d) has never been applied to conservation groups or activities.

The Crane Trust now appeals from TERC's decision.

## ASSIGNMENT OF ERROR

The Crane Trust assigns that TERC erred in affirming the Board's decision to deny tax exemption for the Subject Properties for the 2015 tax year.

## STANDARD OF REVIEW

[1-3] Appellate courts review decisions rendered by TERC for errors appearing on the record.[1] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[2] The meaning of a statute is a question of law, and a reviewing court is obligated to reach its conclusions independent of the determination made by the Tax Equalization and Review Commission.[3]

---

[1] *Cain v. Custer Cty. Bd. of Equal.*, 291 Neb. 730, 868 N.W.2d 334 (2015).

[2] *Id.*

[3] *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.*, 260 Neb. 905, 620 N.W.2d 90 (2000).

- 974 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
PLATTE RIVER CRANE TRUST v. HALL CTY. BD. OF EQUAL.
Cite as 298 Neb. 970

## ANALYSIS

The Nebraska Constitution authorizes the Legislature to exempt from taxes "property owned and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or user."[4] Pursuant to this authority, the Legislature adopted a statute that exempts from property taxes:

> Property owned by educational, religious, charitable, or cemetery organizations, or any organization for the exclusive benefit of any such educational, religious, charitable, or cemetery organization, and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not (i) owned or used for financial gain or profit to either the owner or user, (ii) used for the sale of alcoholic liquors for more than twenty hours per week, or (iii) owned or used by an organization which discriminates in membership or employment based on race, color, or national origin.[5]

The parties stipulated that the Subject Properties were not used for the sale of alcohol and were not owned or used by an organization which discriminates in membership or employment based on race, color, or national origin. Furthermore, the Crane Trust applied for exemption as a charitable organization; it does not argue that it qualifies as an educational, religious, or cemetery organization. Thus, the issues are limited.

For Crane Trust to be entitled to a property tax exemption for its six parcels, it must show (1) that the parcels are owned by a charitable organization; (2) that the parcels are used exclusively for educational; religious, charitable, or cemetery purposes; and (3) that the parcels were not owned or used for financial gain or profit to either the owner or user. TERC concluded that the Crane Trust failed to show the parcels were

---

[4] Neb. Const. art. VIII, § 2.

[5] § 77-202(1)(d).

- 975 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
PLATTE RIVER CRANE TRUST v. HALL CTY. BD. OF EQUAL.
Cite as 298 Neb. 970

owned by a charitable organization and thus did not address the other two requirements.

### Nature of Organization

In concluding that the Crane Trust was not a charitable organization, TERC noted that the Supreme Court has never held that a conservation group may fit within the definition of "charitable organization" under § 77-202. While true, we have also never considered it.

Section 77-202(1)(d) provides that a "charitable organization means an organization operated exclusively for the purpose of the mental, social, or physical benefit of the public or an indefinite number of persons." Applying this statutory language, TERC acknowledged that the Crane Trust's conservation efforts provided mental, social, and physical benefits to the public, but concluded, without explanation, that the Subject Properties were not operated exclusively for those purposes.

We conclude that TERC's finding that the Crane Trust did not operate exclusively for the public's benefit is not supported by the evidence. The term "exclusively" means the primary or dominant use of the property is controlling in determining whether the property is exempt from taxation.[6] And as TERC noted, the Crane Trust adduced considerable evidence of its efforts to provide educational, scientific, and recreational benefits to the general public. The evidence shows that the Crane Trust's efforts to protect the natural habitat for migratory birds ensures that the public can continue to enjoy and learn about that habitat and birds and wildlife thereon.

Additionally, the evidence shows that the Crane Trust is engaged in numerous endeavors to educate the public about the habitat, the wildlife on the habitat, and conservation in general. The Crane Trust's land, including the Subject Properties, is

---

[6] See *Fort Calhoun Bapt. Ch. v. Washington Cty. Bd. of Eq.*, 277 Neb. 25, 759 N.W.2d 475 (2009).

also open for and subject to scientific study. While the Board argues that the evidence discussed in this paragraph is irrelevant, because the Crane Trust is not applying for exemption as an educational organization, we disagree. We find this evidence relevant to whether the Crane Trust is providing a mental benefit to the public. "'[M]ental'" means "'intellectual,'" which in turn means, among other things, "'engaged in creative literary, artistic, or scientific labor.'"[7]

After reviewing the evidence, we conclude that the Crane Trust operated exclusively for the purpose of the mental, social, or physical benefit of the public.

[4] TERC found, and the Board argues, that the Legislature did not intend for conservation groups to be considered a "charitable organization" under § 77-202(1)(d). Although we appreciate TERC's deference to the Legislature, we respectfully disagree. A tax exemption for charitable use is allowed because those exemptions benefit the public generally and the organization performs services which the state is relieved pro tanto from performing.[8] In Neb. Rev. Stat. § 37-803 (Reissue 2016) of the Nongame and Endangered Species Conservation Act, the Legislature declared that the "state shall assist in the protection of [certain] species of wildlife and wild plants which are determined to be threatened or endangered" and that "it is the policy of this state to conserve species of wildlife for human enjoyment" and other purposes. Because the Legislature views the conservation of endangered species as a policy of the state, and conservation groups like the Crane Trust relieve the state of that burden, we conclude that the Legislature intended for those groups, provided they otherwise meet "charitable organization" criteria, to be considered "charitable organizations" under § 77-202(1)(d).

---

[7] *Neb. State Bar Found. v. Lancaster Cty. Bd. of Equal.*, 237 Neb. 1, 15, 465 N.W.2d 111, 120 (1991).

[8] *Bethesda Found. v. Buffalo Cty. Bd. of Equal.*, 263 Neb. 454, 640 N.W.2d 398 (2002).

- 977 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
PLATTE RIVER CRANE TRUST v. HALL CTY. BD. OF EQUAL.
Cite as 298 Neb. 970

Our decision is supported by several other states' interpretations of similar statutes. For example, in *Francis Small Heritage v. Town of Limington*,[9] the Maine Supreme Judicial Court held that a conservation group qualified as a charitable organization because the organization lessened the burdens of the government by assisting the state in achieving its conservation policy goals. The Maine court concluded that the Legislature enunciated a strong public policy in favor of conservation when it declared in a section of its Natural Resources Protection Act that the state's wetlands and wildlife habitat are "'resources of state significance'" and that they benefit the state's citizens.[10]

And in *Turner v. Trust for Public Land*,[11] a Florida court concluded that a conservation group qualified as a charitable organization because there was "little question that conservation serves a public purpose" where Florida's state constitution provided that it was "'the policy of the state to conserve and protect its natural resources and scenic beauty . . . .'" A number of other states, using rationale similar to that in *Francis Small Heritage* and *Turner*, have also concluded that conservation organizations may qualify as charitable organizations.[12]

### Use of Subject Properties

In addition to showing that the Subject Properties are owned by a charitable organization, the Crane Trust must also show that the Subject Properties are used exclusively for educational, religious, charitable, or cemetery purposes.[13]

---

[9] *Francis Small Heritage v. Town of Limington*, 98 A.3d 1012 (Me. 2014).

[10] *Id.* at 1020.

[11] *Turner v. Trust for Public Land*, 445 So. 2d 1124, 1126 (Fla. App. 1984).

[12] See, *New England Forestry v. Board of Assessors*, 468 Mass. 138, 9 N.E.3d 310 (2014); *Pecos River Open Spaces, Inc. v. Cnty. of San Miguel*, 2013 NMCA 029, ___ P.3d ___ (2013); *Little Miami v. Kinney*, 68 Ohio St. 2d 102, 428 N.E.2d 859 (1981); *Mohonk Trust v. Assessors*, 47 N.Y.2d 476, 392 N.E.2d 876, 418 N.Y.S.2d 763 (1979).

[13] See *Lincoln Woman's Club v. City of Lincoln*, 178 Neb. 357, 133 N.W.2d 455 (1965).

- 978 -

Nebraska Supreme Court Advance Sheets
298 Nebraska Reports
PLATTE RIVER CRANE TRUST v. HALL CTY. BD. OF EQUAL.
Cite as 298 Neb. 970

In this case, the Crane Trust's status as a charitable organization and its use of the Subject Properties are closely related issues. For this reason, the parties largely repeat their arguments or incorporate them by reference. For the same reasons that we found the Crane Trust qualified as a charitable organization, we find that the Subject Properties were used exclusively for charitable purposes.

### Financial Gain or Profit

Finally, the Crane Trust must show that the Subject Properties were not owned or used for financial gain or profit to either the owner or user. The Board argues that the Subject Properties were used for financial gain or profit solely because the Crane Trust entered into a lease agreement for cattle grazing with a farming operation for $9,300. However, the fact that income is generated as a result of an exempt use of the property does not make the property taxable.[14] Property is not used for financial gain or profit to either the owner or user if no part of the income from the property is distributed to the owners, users, members, directors, or officers, or to private individuals.[15]

Here, the evidence showed that the lease money was not distributed to its owners, users, members, directors, officers, or anyone else, and that the cost of managing the Subject Properties far exceeded the amount of lease money. Although there was some evidence that the cattle grazing furthered the Crane Trust's habitat management program, even if it did not, the use of the land for cattle grazing was incidental to the Crane Trust's primary purpose of conserving and protecting the natural habitat for migratory birds and wildlife for the public's benefit. We therefore conclude that the Subject Properties were not owned or used for financial gain or profit to either the owner or user.

---

[14] *Neb. Unit. Meth. Ch. v. Scotts Bluff Cty. Bd. of Equal.*, 243 Neb. 412, 499 N.W.2d 543 (1993).

[15] *Fort Calhoun Bapt. Ch., supra* note 6.

Because the Subject Properties meet the requirements for a charitable tax exemption under § 77-202(1)(d), we conclude that they are entitled to exemption for the tax year in question. We therefore reverse TERC's decision and remand the cause for an order in accordance with this opinion.

## CONCLUSION

For the reasons set forth above, we reverse TERC's decision and remand the cause for TERC to enter an order that the Subject Properties are entitled to a property tax exemption under the provisions of § 77-202(1)(d).

Reversed and remanded with directions.

Wright, J., not participating.

Cassel, J., dissents.