PHELPS COUNTY BOARD OF EQUALIZATION,
APPELLANT, V. G. DARLENE GRAF, PHELPS COUNTY
ASSESSOR, ET AL., APPELLEES.
606 N.W.2d 736

Filed February 11, 2000. No. S-99-009.

Jeffrey M. Cox, of Dier, Osborn & Cox, P.C., for appellant.

Robert J. McCormick for appellee G. Darlene Graf.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

The Phelps County Board of Equalization (Board) reduced the assessed value on certain parcels of real estate that had previously been valued by the Phelps County assessor (Assessor). The Assessor appealed to the Tax Equalization and Review Commission (TERC), which vacated and reversed the Board's action, finding that the Board had made an adjustment to a subclass of property and that such action was unreasonable and arbitrary.

## SCOPE OF REVIEW

■ Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Parnell v. Madonna Rehab. Hosp., ante* p. 125, 602 N.W.2d 461 (1999).

■ In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *State ex rel. Stenberg v. Moore, ante* p. 199, 602 N.W.2d 465 (1999).

■ Decisions rendered by TERC shall be reviewed by the court for errors appearing on the record. *Pittman v. Sarpy Cty. Bd. of Equal., ante* p. 390, 603 N.W.2d 447 (1999).

## FACTS

In the fall of 1997, the Board began the process of transferring residential valuation data to its new computer software program. The process included changing the valuation formula for residential lots from one based on front footage to one based on the square footage of a lot and included updating the residential lot values to their fair market value as of January 1, 1998. The last prior valuation of the lots was done in 1989.

On July 21, 1998, the Board reduced by 25 percent the value of more than 80 parcels of real estate located in Holdrege,

Nebraska. The Board took this action pursuant to Neb. Rev. Stat. § 77-1504 (Cum. Supp. 1998), which provides in part: "The county board of equalization may meet on or after June 1 and on or before July 25 to consider and correct the current year's assessment of any real property which has been undervalued, overvalued, or omitted."

Thereafter, the Board mailed notices of valuation change to the subject property owners between July 23 and August 1, 1998. No protests were filed. However, on August 10, the Assessor appealed to TERC regarding the Board's action of July 21. After TERC issued notices in lieu of summons to the Board and various property owners, TERC set the matter for hearing on December 15. TERC subsequently overruled the Board's motion for a continuance and change of venue. At the hearing, the Board moved for summary dismissal on the basis that the Assessor had not filed a protest with the Board prior to appealing to TERC and therefore had not properly perfected the appeal. This motion was overruled.

On December 23, 1998, TERC vacated and reversed the action of the Board, having concluded that the action of the Board was unreasonable and arbitrary and constituted an adjustment to a subclass of real property. The Board timely appealed to the Nebraska Court of Appeals, and we moved this appeal to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.

## ASSIGNMENTS OF ERROR

The Board asserts that TERC erred in (1) determining that the Assessor had perfected an appeal and that TERC had jurisdiction to hear the appeal, (2) determining that the action of the Board was unreasonable and arbitrary, (3) determining that the action of the Board constituted an adjustment of a class or subclass of real property, (4) prematurely deciding the case, and (5) denying the Board's motion for a continuance and change of venue.

## ANALYSIS

We first address whether TERC had jurisdiction to hear the Assessor's appeal. In determining whether an appeal was prop-

erly perfected, we examine the provisions of § 77-1504 and Neb. Rev. Stat. §§ 77-1510, 77-5007, and 77-5007.01 (Cum. Supp. 1998).

Section 77-1504 provides in part:

> The action of the county board of equalization may be protested to the board within thirty days after the mailing of the notice required by this section. If no protest is filed, the action of the board shall be final. If a protest is filed, the county board of equalization shall hear the protest in the manner prescribed in section 77-1502, except that all protests shall be heard and decided on or before September 15.
>
> The action of the county board of equalization upon a protest filed pursuant to this section may be appealed to the Tax Equalization and Review Commission on or before October 15.

The Assessor argues that the procedure set forth in § 77-1504 applies to taxpayers only and does not apply to an assessor in his or her official capacity. Instead, the Assessor relies on § 77-5007, which gives county assessors the authority to appeal decisions by county boards to TERC. Under § 77-5007,

> [t]he commission has the power and duty to hear and determine appeals of:
>
> (1) Decisions of any county board of equalization equalizing the value of individual tracts, lots, or parcels of real property so that all real property is assessed uniformly and proportionately.
>
> . . . .
>
> (9) Any other decision of any county board of equalization.

In addition, § 77-5007.01 provides in part: "In appeals by a county assessor in his or her official capacity pursuant to section 77-5007, the county assessor may request that the district court appoint an attorney to represent the county assessor before the commission."

Section 77-1510 provides that appeals are to be taken from any action of a county board of equalization to TERC in accordance with the Tax Equalization and Review Commission Act (Act), Neb. Rev. Stat. §§ 77-5001 to 77-5031 (Reissue 1996,

Cum. Supp. 1998 & Supp. 1999), and therefore, the authority for an assessor to appeal the action of a county board is derived from §§ 77-5007 and 77-5007.01. It is clear that an assessor may appeal a decision of a county board to TERC. The issue is whether an assessor must file a protest with the county board before an appeal can be taken to TERC.

Although *Pittman v. Sarpy Cty. Bd. of Equal., ante* p. 390, 603 N.W.2d 447 (1999), dealt with an appeal from a county board's grant of a tax exemption under Neb. Rev. Stat. § 77-202 (Cum. Supp. 1998), it is instructive in that appeals regarding tax exemptions are brought in the same manner as set forth in § 77-1510 and Neb. Rev. Stat. § 77-1511 (Reissue 1996). In *Pittman*, a nonprofit corporation claimed the county assessor lacked standing to appeal the county board's grant of a tax exemption. The corporation relied on *Bemis v. Board of Equalization of Douglas County*, 197 Neb. 175, 247 N.W.2d 447 (1976), in which we held that a county assessor had no standing to bring an appeal of a tax exemption determination and that the county assessor's responsibility was limited to an advisory rather than an adversary capacity. In *Pittman*, we recognized that the statutory scheme changed with the adoption of the Act and that a county assessor now has the authority to appeal a decision by a county board to TERC in a variety of situations as described in § 77-5007, including "(9) [a]ny other decision of any county board of equalization."

Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Parnell v. Madonna Rehab. Hosp., ante* p. 125, 602 N.W.2d 461 (1999). In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *State ex rel. Stenberg v. Moore, ante* p. 199, 602 N.W.2d 465 (1999). Statutes relating to the same subject matter are to be construed together so as to maintain a consistent and sensible scheme. *Pittman v. Sarpy Cty. Bd. of Equal., supra.*

We find no valid reason why an assessor in his or her official capacity should be required to file a protest with the county

board before taking an appeal to TERC under § 77-5007. We therefore conclude that since the authority of county assessors to appeal decisions of the county boards is derived from the Act, a protest described in § 77-1504 is not a prerequisite to an appeal by an assessor. Accordingly, TERC had jurisdiction to hear the Assessor's appeal.

We next address the Board's claim that TERC erred in finding the action of the Board was unreasonable and arbitrary. TERC hears the appeals in accordance with § 77-1511, which provides:

> The Tax Equalization and Review Commission shall hear appeals and cross appeals taken under section 77-1510 as in equity and without a jury and determine anew all questions . . . which relate to the liability of the property to assessment, or the amount thereof. The commission shall affirm . . . the board unless evidence is adduced establishing that the action of the board was unreasonable or arbitrary or . . . that the property of the appellant is assessed too low.

■ Once TERC enters its decision, any person aggrieved by a final decision by TERC may obtain judicial review in the Court of Appeals. See § 77-5019(1). Decisions rendered by TERC shall be reviewed by the court for errors appearing on the record. *Pittman v. Sarpy Cty. Bd. of Equal., ante* p. 390, 603 N.W.2d 447 (1999). When reviewing an order for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *US Ecology v. Boyd Cty. Bd. of Equal.,* 256 Neb. 7, 588 N.W.2d 575 (1999). Therefore, our review is to determine whether TERC's decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

TERC concluded the Assessor had established that the decision of the Board which reduced the property value of certain parcels of real estate by 25 percent was unreasonable and arbitrary. In response, the Board argues that TERC ignored evidence which the Board considered in making its determination. The Board claims to have considered numerous protests by owners of certain unimproved lots which brought to the Board's atten-

tion the issue of overvaluation. It further asserts that the Assessor had repeatedly recommended that the Board reduce the value of other vacant lots which lacked certain access by as much as 75 percent. The Board claims that two of its members conducted personal investigations of market and sales data based on information received from the Assessor and that these members visited with area real estate agents to get a "feel" for the market. One board member testified that he obtained a qualified residential sales roster from the Assessor before the Board took its action, and from that, he was able to compare assessed values to actual sales information on numerous residential lots in the county.

■ There is a presumption that a county board of equalization has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action. That presumption remains until there is competent evidence presented to the contrary. See *US Ecology v. Boyd Cty. Bd. of Equal., supra.* The Board claims that the Assessor did not overcome this presumption, and therefore, we examine the record to determine whether the Assessor successfully rebutted the presumption that the Board acted upon sufficient competent evidence to justify its action.

Prior to 1998, a vacancy adjustment for unimproved residential lots in Phelps County had been in place. The adjustment ranged from 25 to 50 percent. As a part of the 1998 revaluation, the Assessor eliminated this adjustment because all lots, whether improved or unimproved, should be appraised as vacant and available for sale according to standard professional mass appraisal practices. This process was completed by the appraiser on March 20, 1998.

The mass appraisal valuation formulas arrived at for the residential lots in Phelps County were tested by comparing the results from the application of the formula to an independent sales study. The revaluation process was uniformly and proportionately applied to all residential lots in Holdrege to bring them to fair market value as of January 1, 1998.

After June 1 and before July 21, 1998, a member of the Board requested that the assistant assessor provide him with a list of all unimproved lots and all residential lots with improvements of

$1,500 or less in the city of Holdrege. This list, which was compiled from the electronic database maintained by the Assessor, was divided into two parts. The first part listed all unimproved residential lots in the city of Holdrege, and the second part listed all improved residential lots in the city of Holdrege with improvements valued at $1,500 or less. The Board member then fashioned a list of lots in the city of Holdrege which was introduced to the Board for discussion on July 21 with the following introductory statement:

> All lots valued above $5,000 which have not been adjusted due to other considerations, such as farmed and etc. I propose that these lots get a 25% reduction basked [sic] on the fact they are not readily marketable unless you can find someone who is willing to build on these lots. This being that some of these lots have been available for sale for over 20 years. No lot to be valued below $5,000.00.

The Board amended the proposal by deleting the phrase "[n]o lot to be valued below $5,000.00" and then adopted the proposal as amended.

On December 23, 1998, TERC vacated and reversed the action of the Board, finding that the subclass of property created by the Board was vacant residential real property within the city of Holdrege, with an assessed value of $5,000 or more and improvements of $1,500 or less.

At the hearing, TERC found that the Assessor had valued certain parcels of residential real property in Holdrege for tax year 1998. The parcels either were vacant or had improvements of $1,500 or less. The Board, on its own motion, reduced the assessed values of the above parcels by 25 percent.

TERC found that the Assessor had established the per-square-foot values for the land component of residential real property assessments in Holdrege based on a market analysis and that all residential land within Holdrege was valued using these per-square-foot values for tax year 1998.

TERC found that in utilizing these values, the Assessor was performing her statutory duty to uniformly and proportionately value residential real property within the county for tax year 1998 and that there was no evidence to rebut or contradict the

Assessor's testimony regarding the determination of these assessed values.

TERC found that the action of the Board was based upon conversations with " 'real estate people' " regarding eight or nine parcels of vacant real property and that no competent evidence of actual or fair market value of the parcels comprising the subclass was adduced by the Board at the hearing before either the Board or TERC. The adjustment by the Board did not address improved lots and did not address vacant lots with an assessed value of less than $5,000.

TERC found that the action of the Board did not promote uniform and proportionate assessments and, in fact, had the opposite effect.

TERC concluded that the Board had no jurisdiction to adjust the values of the subclass of vacant residential real property in Holdrege with a value of $5,000 or more and with improvements of $1,500 or less and that as a matter of law, the Assessor had established that the decision of the Board was unreasonable and arbitrary.

A decision is arbitrary when it is made in disregard of the facts or circumstances and without some basis which would lead a reasonable person to the same conclusion. *Pittman v. Sarpy Cty. Bd. of Equal., ante* p. 390, 603 N.W.2d 447 (1999). The evidence showed that one Board member testified that the amount of $5,000 was selected because he "felt that that was an area where you could stop and go from" and that this cutoff was "possibly" arbitrary. There was no evidence which showed that the Board researched the valuation of lower priced lots to determine if these lots should have received the same reduction. The evidence did not support the Board's decision to exclude lots with improvements in excess of $1,500. One Board member testified that this exclusion was an error of the Board. Another member testified that once a house is constructed on a lot, the value of the lot should be increased and, therefore, agreed with the assessed value of the lots with houses on them.

The evidence presented to TERC was sufficient to rebut the presumption of the validity of the Board's actions. The 25-percent reduction by the Board was based upon a Board member's conversation with real estate agents concerning only eight

or nine lots, yet the Board reduced all the lots based upon this recommendation. Therefore, the real property was valued by a method different from the method applied by the Assessor to other residential lots in Phelps County. As a result, the real property in Phelps County was not uniformly and proportionately assessed as required by Neb. Const. art. VIII, § 1.

The Board did not establish a clear-cut procedure by which it was able to justify such valuation, and we conclude that TERC's decision is not contrary to law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.

 We next consider whether the action of the Board constituted an adjustment to a subclass of real property. Pursuant to § 77-5027, the authority to make adjustments by class or subclass is specifically reserved to TERC.

TERC determined that by reducing the values of certain parcels of residential real estate, the Board had made an adjustment to a subclass. We agree. The subclass created by the Board was vacant residential real property located in Holdrege with an assessed value of $5,000 or more and improvements of $1,500 or less. The Board's action of July 21, 1998, reduced by 25 percent the assessed value of real property described in the subclass.

The Board claims it did not make adjustments to a subclass of real property, but, instead, reduced the values of various parcels of real property specifically identified in its motion. The Board asserts that since its minutes list the lots to be given the 25-percent downward adjustment instead of defining the subclass, it has created no subclass. We find this argument to be without merit. The Board did not consider the lots individually, but gave all the lots the same percentage reduction.

The power to make adjustments to a subclass of real property is reserved to TERC, see § 77-5027, and TERC correctly determined that the Board had made an adjustment to a subclass of property contrary to law.

We do not address the Board's remaining assignments of error other than to note that they are without merit. The decision of TERC is affirmed.

AFFIRMED.