Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/07/2025 08:08 AM CST

- 303 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
320 NEBRASKA REPORTS
PINNACLE ENTERS. v. SARPY CTY. BD. OF EQUAL.
Cite as 320 Neb. 303

PINNACLE ENTERPRISES, INC., AND MIDLAND HEIGHTS
APARTMENTS, L.L.C., APPELLANTS, V. SARPY COUNTY
BOARD OF EQUALIZATION AND DANNY PITTMAN,
IN HIS OFFICIAL CAPACITY AS SARPY COUNTY
ASSESSOR, APPELLEES.

___ N.W.3d ___

Filed November 7, 2025.    No. S-24-686.

1. **Taxation: Judgments: Appeal and Error.** Appellate courts review decisions rendered by the Tax Equalization and Review Commission for errors appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Taxation: Appeal and Error.** Questions of law arising during appellate review of Tax Equalization and Review Commission decisions are reviewed de novo on the record.

Appeal from the Tax Equalization and Review Commission. Reversed and remanded with directions.

Douglas W. Ruge for appellants.

William J. Bianco, of Bianco Stroh, L.L.C., for appellee Danny Pittman.

FUNKE, C.J., MILLER-LERMAN, CASSEL, STACY, PAPIK, FREUDENBERG, and BERGEVIN, JJ.

PAPIK, J.

- 304 -

Nebraska Supreme Court Advance Sheets
320 Nebraska Reports
PINNACLE ENTERS. v. SARPY CTY. BD. OF EQUAL.
Cite as 320 Neb. 303

After the Sarpy County Assessor (the Assessor) set taxable values of properties owned by taxpayers Pinnacle Enterprises, Inc., and Midland Heights Apartments, L.L.C. (collectively the Taxpayers), the Taxpayers filed protests with the Sarpy County Board of Equalization (the Board). The Board sided with the Taxpayers and lowered the valuations. The Assessor then appealed to the Nebraska Tax Equalization and Review Commission (TERC). TERC determined that the Board based its determinations of actual value on an improper methodology, while the Assessor's valuations were consistent with the governing statute and supported by the evidence. Accordingly, TERC vacated and reversed the Board's valuations. In this appeal filed by the Taxpayers, we conclude that TERC erred because the Board's determinations of value were not shown to be unreasonable or arbitrary. We reverse TERC's decision and remand the cause with directions to affirm the Board's valuations.

## BACKGROUND

*The Taxpayers Successfully*
*Protest Assessments*
*Before the Board.*

The Taxpayers own an apartment complex situated on two adjoining parcels in Sarpy County, Nebraska. For one parcel, the Assessor set the taxable value of the property at $8,953,000 for tax years 2020 and 2021. For the other parcel, the Assessor set the taxable value of the property at $5,263,000 for tax years 2020 and 2021.

The Taxpayers thought the valuations were too high, so they protested to the Board. A referee conducted protest procedures for the Board and recommended taxable values equal to lower values advocated by the Taxpayers—$7,450,829 and $3,559,566 for the respective parcels for tax years 2020 and 2021. The Board adopted the referee's recommended valuations.

- 305 -

Nebraska Supreme Court Advance Sheets
320 Nebraska Reports
PINNACLE ENTERS. v. SARPY CTY. BD. OF EQUAL.
Cite as 320 Neb. 303

*The Assessor Appeals to TERC,*
*Evidence Presented.*

The Assessor appealed the Board's decision to TERC. TERC conducted a hearing. The parties agreed that the properties should be valued using an income approach, and they generally agreed about the formula that should be used to do so. The main dispute was what figure should be used to represent the Taxpayers' income from the properties: The Assessor argued for using a market-typical income figure, but the Taxpayers submitted that an actual income figure could be used.

An appraiser involved in the Assessor's valuation of the properties testified. She explained that the Assessor applied an income approach to value the properties. This involved estimating the properties' potential gross income, deducting estimated vacancy and collection losses to determine effective gross income, deducting the estimated operating expenses to determine net operating income, and dividing the net operating income by an estimated capitalization rate to yield the value of the properties. The Assessor relied on market data, rather than the Taxpayers' actual income, to calculate the properties' potential gross income.

TERC also heard the testimony of an executive and partner of the Taxpayers. He did not object to the use of an income approach or to the specific formula used by the Assessor. But he did disagree with the income figures the Assessor used. He testified that to determine the properties' potential gross income, the Assessor should have used the properties' actual rents like the referee recommended, rather than typical market rental rates, which he testified were higher than the actual rents.

Bradley Rogge, a licensed real estate appraiser, acted as the referee before the Board and agreed with the Taxpayers' requested valuations. Rogge testified at the TERC hearing that for the Taxpayers' protests before the Board, the

- 306 -

Nebraska Supreme Court Advance Sheets
320 Nebraska Reports
PINNACLE ENTERS. v. SARPY CTY. BD. OF EQUAL.
Cite as 320 Neb. 303

Taxpayers provided him with a pro forma showing the prop-
erties' actual income for 1 month; Rogge then verified with
the Taxpayers that the income for that month was reflec-
tive of the Taxpayers' income generally. Rogge testified that
other than using actual gross income in their calculations, the
Taxpayers used the same methodology as the Board.

Rogge also compared the actual income figures provided by
the Taxpayers to the estimated rental price for the Taxpayers'
properties on an online real estate database. Rogge explained
that the database estimated the rent for a given property based
on a combination of the price at which a broker had listed
the property—if it was listed—and a survey of surround-
ing properties also in the database. Rogge testified that the
income figures provided by the Taxpayers were in line with
the figures on the database. He testified that he checked the
database's estimates for the Taxpayers' properties for 2020 and
2021 to confirm that the rental rates the Taxpayers provided
were reasonable. He testified that even though the Taxpayers
provided him rental rates from 2017, those rates were con-
sistent with the database's estimated rental rates for 2020 and
2021. Rogge's recommendation to the Board stated an aver-
age rent per unit for the Taxpayers' properties and cited the
database. His recommendation to the Board also noted that
the Assessor's market rents for the properties appeared high
compared to similar properties.

Rogge opined that using the actual income in property valu-
ation was better than using an estimate for the region derived
from market data. Rogge did concede, however, that he was
not experienced with mass appraisal methodology, nor did he
perform a fee appraisal for the Taxpayers' properties because
that was not his role as a referee. Rogge explained that he
was hired at an hourly rate to attend hearings and make a
recommendation based on the evidence presented. Rogge also
acknowledged in his testimony to TERC that in his recommen-
dation to the Board, he incorrectly noted that the Taxpayers

- 307 -

Nebraska Supreme Court Advance Sheets
320 Nebraska Reports
PINNACLE ENTERS. v. SARPY CTY. BD. OF EQUAL.
Cite as 320 Neb. 303

provided expense information to him. He explained, however, that he did not rely on that expense information when arriving at his recommendation. Instead, he used the same expense ratio implemented by the Assessor.

*TERC Vacates and Reverses*
*the Board's Decision.*

After the hearing, TERC vacated and reversed the Board's decision. TERC concluded that the Board's determination of value was unreasonable. TERC found the Board should not have relied on Rogge because Rogge used the Taxpayers' actual rental rates to calculate potential gross income.

TERC's decision referred to appraisal industry publications explaining mass appraisal methods. TERC noted that the International Association of Assessing Officers had stated:

"Actual or reported figures can be used as long as they reflect typical figures (or typical figures can be used for all properties)." "For properties with reported figures the assessor has two choices: (1) use the reported figures for instances in which they have been verified or are consistent with estimated (typical) figures, or (2) consistently use estimated figures in all cases."

TERC observed that while Rogge had used the same expense, vacancy, and capitalization rates as the Assessor, "no evidence was adduced to conclude the income rates used by the . . . Board were based on typical market rates."

TERC also reasoned:

The methods expressly stated in [Neb. Rev. Stat. § 77-112 (Reissue 2018)] are the sales comparison approach, the income approach, and the cost approach. The [Taxpayers' and the Board's] methodology of using actual income rates in conjunction with market typical expense, vacancy, and capitalization rates is not identified in statute and no evidence of its professional acceptance as an accepted mass appraisal method has been produced.

After determining that the valuations suggested by Rogge and adopted by the Board were unreasonable, TERC went on to conclude that the rates used by the Assessor were consistent with professionally accepted mass appraisal techniques. TERC vacated and reversed the Board's valuations and ordered that the taxable value for the properties were the amounts initially set by the Assessor.

The Taxpayers appealed TERC's decision.

## ASSIGNMENT OF ERROR

Relevant to this opinion, the Taxpayers assign, restated, that TERC's decision should be reversed because TERC erred by reversing the Board's determination of actual value.

## STANDARD OF REVIEW

Two standards of review are relevant in this case—the standard we, as an appellate court, apply when reviewing decisions of TERC and the standard TERC is to apply when reviewing decisions of a county board of equalization. In this case, the former standard is straightforward while the latter requires some discussion.

[1-3] Our standard of review in this case is well-established. Appellate courts review decisions rendered by TERC for errors appearing on the record. *Platte River Crane Trust v. Hall Cty. Bd. of Equal.*, 298 Neb. 970, 906 N.W.2d 646 (2018). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* Questions of law arising during appellate review of TERC decisions are reviewed de novo on the record. *County of Webster v. Nebraska Tax Equal. & Rev. Comm.*, 296 Neb. 751, 896 N.W.2d 887 (2017).

The standard of review TERC was to apply in this case is somewhat more complicated. TERC's review is governed by Neb. Rev. Stat. § 77-5016(9) (Reissue 2018):

- 309 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
320 NEBRASKA REPORTS
PINNACLE ENTERS. v. SARPY CTY. BD. OF EQUAL.
Cite as 320 Neb. 303

In all appeals [heard by TERC], excepting those arising [from a county tax levy], if the appellant presents no evidence to show that the order, decision, determination, or action appealed from is incorrect, [TERC] shall deny the appeal. If the appellant presents any evidence to show that the order, decision, determination, or action appealed from is incorrect, such order, decision, determination, or action shall be affirmed unless evidence is adduced establishing that the order, decision, determination, or action was unreasonable or arbitrary.

We have read § 77-5016(9) to create two burdens of proof that a party must satisfy to be successful on appeal to TERC. There is "a presumption in an appeal to TERC that a county board has faithfully performed its official duties in making an assessment and has acted upon sufficient competent evidence to justify its action." *Cain v. Custer Cty. Bd. of Equal.*, 315 Neb. 809, 818, 1 N.W.3d 512, 521 (2024). That presumption remains until competent evidence to the contrary is presented; this is the first burden of proof. See *id.* We have further explained that if the "challenging party" overcomes the presumption of validity by competent evidence, the reasonableness of the valuation fixed by the county board becomes a question of fact based on all the evidence presented; this is the second burden of proof. See *id.*

We have outlined what must be shown to carry this second burden of proof in cases in which *taxpayers* challenge the valuation of a county board:

The burden of showing that a valuation is unreasonable or arbitrary rests upon the taxpayer on appeal from the action of the board. And the burden of persuasion imposed on a complaining taxpayer is not met by showing a mere difference of opinion unless it is established by clear and convincing evidence that the valuation placed upon the property, when compared with valuations placed on other similar property, is grossly excessive and is the result

- 310 -

Nebraska Supreme Court Advance Sheets
320 Nebraska Reports
PINNACLE ENTERS. v. SARPY CTY. BD. OF EQUAL.
Cite as 320 Neb. 303

of a systematic exercise of intentional will or failure of
plain duty, and not mere errors of judgment.

*Lancaster Cty. Bd. of Equal. v. Moser*, 312 Neb. 757, 767, 980
N.W.2d 611, 619 (2022). See, also, e.g., *Cain*, 315 Neb. at 818,
1 N.W.3d at 521 ("[o]n appeal from an action of the county
board [of equalization], the taxpayer has the burden of show-
ing that a valuation is unreasonable or arbitrary"); *Ideal Basic
Indus. v. Nuckolls Cty. Bd. of Equal.*, 231 Neb. 653, 655, 437
N.W.2d 501, 502 (1989) (on appeal to TERC, "[t]he burden
of showing such valuation to be unreasonable rests upon the
taxpayer on appeal from the action of the board").

But here, the party that appealed from the Board to TERC
was the Assessor, and we do not appear to have specifically
addressed the second burden of proof in such cases. We do
have at least one case in which a county assessor successfully
appealed a county board's valuation decision to TERC and
the taxpayer appealed the TERC's decision to this court. See
*Phelps Cty. Bd. of Equal. v. Graf*, 258 Neb. 810, 606 N.W.2d
736 (2000). There, "we examine[d] the record to determine
whether the [a]ssessor successfully rebutted the presumption
that the [b]oard acted upon sufficient competent evidence to
justify its action." *Id.* at 816, 606 N.W.2d at 741. We deter-
mined that the county assessor rebutted the presumption, sat-
isfying the first burden of proof. However, as to the second
burden of proof, we did not clearly articulate whether the
county assessor then had a burden to show the county board's
valuation was arbitrary or unreasonable. We take the opportu-
nity to do so today.

We understand § 77-5016(9) to place the first and second
burdens of proof on the party appealing to TERC, whom-
ever that may be. As quoted above, § 77-5016(9) covers "all
appeals" to TERC, except those arising from county tax levies.
It goes on to set forth how TERC shall respond to evidence
presented by "the appellant." See § 77-5016(9). Therefore, we
conclude that in this case, both the first and second burdens
created by § 77-5016(9) applied to the Assessor.

We have had occasion to explore in some detail what a taxpayer must show to demonstrate that a valuation is arbitrary or unreasonable. However, we recognize that the same exact considerations would not neatly map onto an assessor's attempt to do the same. To note one obvious example, an appealing assessor would almost certainly be challenging a valuation as too low, so he or she would not be required to show that the valuation is "grossly excessive." *Moser*, 312 Neb. at 767, 980 N.W.2d at 619. In any event, to the extent our previous opinions can be read to impose the second burden—the burden of showing that a valuation is unreasonable or arbitrary—on the taxpayer only, we clarify that it applies to any appellant subject to § 77-5016(9) that appeals to TERC.

## ANALYSIS

*Merits of the Taxpayers' Appeal.*

Generally, "all real property in this state, not expressly exempt therefrom, shall be subject to taxation and shall be valued at its actual value." Neb. Rev. Stat. § 77-201(1) (Cum. Supp. 2024).

> Actual value of real property for purposes of taxation means the market value of real property in the ordinary course of trade. Actual value may be determined using professionally accepted mass appraisal methods, including, but not limited to, the (1) sales comparison approach using [statutory] guidelines . . . , (2) income approach, and (3) cost approach.

Neb. Rev. Stat. § 77-112 (Reissue 2018). The "actual values" of the Taxpayers' properties are at the root of this dispute.

The Taxpayers take the position that TERC erred in reversing the Board's determination of the properties' actual values. The Taxpayers claim that TERC erred by concluding that the Board could not rely on Rogge's recommended values, which he calculated by applying an income approach in which the Taxpayers' actual rents were used as a basis for

- 312 -

Nebraska Supreme Court Advance Sheets
320 Nebraska Reports
PINNACLE ENTERS. v. SARPY CTY. BD. OF EQUAL.
Cite as 320 Neb. 303

determining the income the properties generated. Applying the standards of review we discussed above, we agree with the Taxpayers.

TERC relied on appraisal industry publications to conclude that the use of actual rents in conjunction with market typical expense, vacancy, and capitalization rates was not a professionally accepted mass appraisal method. TERC could rely on such publications. TERC "may without inclusion in the record consider and utilize published treatises, periodicals, and reference works pertaining to the valuation or assessment of real or personal property or the meaning of words and phrases if the document is identified in the commission's rules and regulations." See § 77-5016(3). The publications TERC relied on are so identified. See 442 Neb. Admin. Code, ch. 2, § 001.45 (2011) (identifying publications quoted by TERC as containing professionally or generally accepted mass appraisal methods and techniques).

But while TERC could rely on those publications, we do not read the excerpts it quoted from those publications to say that actual income figures cannot be used under the income approach or cannot be used in conjunction with market typical expense, vacancy, and capitalization rates. The excerpts instead said actual, reported figures could be used if they "have been verified or are consistent with estimated (typical) figures."

TERC apparently found that the actual figures the Taxpayers provided and upon which Rogge and the Board based their valuations were not verified or consistent with market typical income. But Rogge testified that he confirmed that the 1-month actual income figure provided by the Taxpayers was consistent with actual income every month, and he then used an online database to confirm that the actual figures provided by the Taxpayers were reasonably consistent with market typical income.

Perhaps TERC believed that Rogge should have done something more or something else to verify that the actual rent

- 313 -

Nebraska Supreme Court Advance Sheets
320 Nebraska Reports
PINNACLE ENTERS. v. SARPY CTY. BD. OF EQUAL.
Cite as 320 Neb. 303

figures the Taxpayers provided to him were consistent with market typical expenses. Given its standard of review, however, TERC could not reverse the Board's valuations merely because it would have valued the properties differently. Even assuming that the Assessor had overcome the first burden of proof imposed by § 77-5016(9), TERC could reverse the Board's valuations only if the Assessor carried the second burden by showing that the Board's valuations were unreasonable or arbitrary. Because Rogge provided a basis for the Board to find that the actual income figures were consistent with market typical income, the Board's valuations could not be found unreasonable or arbitrary on that ground.

Attempting to defend TERC's decision, the Assessor challenges the Board's reliance on Rogge in several respects. First, the Assessor posits that Rogge's testimony was not competent evidence, observing that Rogge did not perform a fee appraisal and lacked mass appraisal experience. We are not persuaded. Rogge appears to have acted in conformity with his statutory role as a referee. See Neb. Rev. Stat. § 77-1502.01 (Reissue 2018) (setting forth referee's duties). In addition, Rogge used the same formula the Assessor used, with the only difference being his use of actual figures as a basis for the properties' income as we discussed above.

The Assessor also points out Rogge's concession that his recommendation to the Board contained the inaccurate statement that the Taxpayers provided expense information. However, Rogge went on to testify that he did not rely on expense information provided by the Taxpayers and instead based his recommendation on the same expense ratio implemented by the Assessor.

Finally, the Assessor challenges Rogge's use of rental rates for the properties from 2017 to arrive at valuations for 2020 and 2021. We are not convinced that this made the Board's reliance on Rogge's recommendation unreasonable. As we have explained, TERC cited industry standards stating that actual figures could be used as long as they were verified or

- 314 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
320 NEBRASKA REPORTS
PINNACLE ENTERS. v. SARPY CTY. BD. OF EQUAL.
Cite as 320 Neb. 303

consistent with typical figures. Rogge testified that he used the online database to confirm that the 2017 rental rates provided by the Taxpayers were in line with estimated rental rates for the properties for 2020 and 2021.

For the reasons we have discussed, we find that the Board's valuations were not unreasonable or arbitrary, and that TERC's decision to the contrary was unreasonable.

*The Assessor's Alternative
Grounds to Affirm.*

The Assessor asserts that two alternative grounds warrant affirming TERC's decision. We are unpersuaded.

First, the Assessor submits that the Taxpayers' appeal should fail because the valuations adopted by the Board were not fairly and proportionately equalized with other properties. See *Cain v. Custer Cty. Bd. of Equal.*, 315 Neb. 809, 1 N.W.3d 512 (2024). The Assessor points us to brief testimony that the Board's valuation of the Taxpayers' properties created a lack of equalization within the taxation class. With little explanation, the Assessor raises a complex issue. See *Lancaster Cty. Bd. of Equal. v. Moser*, 312 Neb. 757, 980 N.W.2d 611 (2022). But we find both the Assessor's articulation of its position and the evidence cited in support of it to be conclusory, and we decline to address it further. See, e.g., *In re Guardianship of Patrick W.*, 316 Neb. 381, 4 N.W.3d 833 (2024) (conclusory assertions unsupported by coherent analytical argument fail to satisfy requirement that appellant's brief must both specifically assign and specifically argue errors).

Second, the Assessor argues that the doctrine of unclean hands mandates affirming TERC's decision. The Assessor suggests that the Taxpayers withheld financial information relevant to their income. We see no reason to affirm on this basis.

## CONCLUSION

In light of our reasoning above, we conclude that TERC erred in reversing the Board's decision. Accordingly, we

- 315 -

Nebraska Supreme Court Advance Sheets
320 Nebraska Reports
PINNACLE ENTERS. v. SARPY CTY. BD. OF EQUAL.
Cite as 320 Neb. 303

reverse TERC's decision and remand the cause to TERC with directions to affirm the Board's valuations of $7,450,829 and $3,559,566 for the respective parcels for tax years 2020 and 2021.

Reversed and remanded with directions.